MARLIN *v.* HARRISON, RECEIVER.

4-8674                                  216 S. W. 2d 45

Opinion delivered December 20, 1948.

Rehearing denied January 17, 1949.

*Chas. W. Garner,* for appellant.

*Phil Herget* and *Kirsch & Cathey,* for appellee.

GRIFFIN SMITH, Chief Justice. Jurisdiction of the trial court is questioned. A related issue is whether non-policy claims against an insolvent insurance company— a company created under Act 137 of 1925—may be paid by the Receiver from proceeds of securities originally deposited as a guarantee fund. Organization and procedural high lights of the defendant Company were touched upon in an opinion written by Mr. Justice Mc-HANEY in 1946. *Better Way Life Insurance Company* v. *Graves, Commissioner,* 210 Ark. 13, 194 S. W. 2d 10. See also the same defendant's appeal against *Linder, Administrator,* 207 Ark. 533, 181 S. W. 2d 467.

In the Graves case two findings were sustained: (1) Insolvency of the Company necessitated appointment of a Receiver, and (2) there were no circumstances that would justify the Supreme Court in reversing a Circuit Court judgment that the Insurance Commissioner should not be compelled by *mandamus* or otherwise to license Better Way Life Insurance Company.

The record does not disclose *policy* claims or policy payments other than the judgment in favor of Linder as Administrator. After affirmance by this Court (207 Ark. 533) a $2,000 obligation, with penalty of 12%, an attorney's fee of $200, and interest, was compromised for $1,100, a part of which ($100) went to an attorney for effectuating the settlement.[1]

*First—Report and Petition of Receiver.*—May 14, 1947, M. J. Harrison as Receiver reported to Pulaski Circuit Court that three claims against the Insurance Company had been presented to him, examined and approved. Dr. H. A. Pennington said that beginning March 23, 1944, and continuing until April 19, 1945, he had repeatedly advanced cash to the Company. The last item was $1,100. This was used in paying the Linder judgment; and all advances were "to enable R. V. Marlin, President, to carry on the affairs of the Company,"

---

[1] The attorney to whom payment was made was "A Doctor Ledbetter." Testimony of R. V. Marlin, p. 156.

—a total of $1,460, evidenced by notes. Dr. Charles H. Brown claimed to have loaned the Company $150 September 12, 1944. A like amount was advanced by Dr. W. A. Carter in two installments.

The several notes, with interest to date of the Receiver's report, aggregated $2,096.45. They were formally allowed. In November 1946 the Court in which the Receivership was pending directed foreclosure of the Poinsett County mortgage, and the Receiver's action in filing complaint was approved in the order wherein judgments for Pennington, Brown, and Carter were rendered. Subsequently the Company filed its written motion to have the judgments set aside, but the term was permitted to lapse without affirmative action.

From this record it will be seen that when the foreclosure suit was heard at Harrisburg there had been adjudication (a) of the Company's insolvency; (b) necessity for appointment of a receiver; (c) the existence of obligations; (d) finality of the Pennington-Brown-Carter demands, and (e) Company ownership of the $12,500 note and mortgage.

It is admitted that in December 1936 when Marlin deeded 459 acres to Watkins, a "straw man" was created for utility of a day. This transitory entity, as *prima facie* owner of the land for a purpose, executed his four percent five-year note to the Insurance Company with the mortgage as security, then quitclaimed to Marlin. The latter, as president of Better Way, was confronted with the statutory mandate to place with the Insurance Commissioner (Act 137 of 1925) ". . . either a certificate of deposit of a bank of this State, or securities in which insurance companies are allowed by law to invest, a sum not less than $10,000 before it shall commence business."[2]

---

[2] Act 318 of 1909 permitted a guarantee fund to be evidenced by United States bonds, "Arkansas State bonds, or funded bonds of any county or city, bonds of improvement districts, tax or levee districts, school districts, *or bonds or notes* secured by deeds of trust on unincumbered real estate and worth with the improvements thereon at least twice the amount of the appraised value for which it is pledged." The provision was applicable to "All fire, life and accident insurance companies, individuals or corporations, now or hereafter doing business in this State." Act 493 of 1921, (Sec. 4) contains a similar

We do not think the several Acts listed in the margin show a legislative intent to permit mortgage notes to be deposited as disclosed by the Watkins mortgage and Marlin's use of it. An active insurance company must necessarily invest its funds to produce revenue. Business care prompts careful scrutiny of securities offered. On the other hand, an organization endeavoring to qualify, but lacking capital, may be easily persuaded to accept an appraisement in circumstances where, as a legitimate investment of money on hand, the mortgage offered would be rejected. Section 2 (3) of Act 137 fixing the capital stock at not less than $50,000, directs that " . . . twenty percent thereof shall be subscribed and actually paid up in cash, and be in the custody of persons named as the first board of directors." This was not done by Better Way.

Marlin, treating as cash the farm mortgage, and note payable to the Insurance Company, held 9,911 of the 10,000 authorized shares. During the Company's period of travail—while official sanction of its operations were on a probative basis—Marlin spent his own funds for advertising purposes, incurred obligations, persuaded others to assist him, and in many respects dealt with Company business on a personal basis. He now contends that the advances by Pennington, Carter, and Brown do not constitute corporation obligations, but were private loans secured by a pledge of Better Way stock; and, if we were required to consider some of the written memoranda brought into the record and give it effect to the exclusion of proof of general relationships, there would be substance to the argument.[3] Marlin's present position is that the personal status is undisputed, hence the claims reduced to judgments by Pulaski Circuit Court were fraudulent, and foreclosure of the mortgage cannot be predicated upon such demands.

provision. Act 47 of 1935, (Sec. 4) is to the same effect. Better Way (Jan. 4, 1937) received a temporary certificate. The license was reissued March 1, 1938, on a temporary basis. The record discloses that the Marlin lands were appraised for a sum double the guarantee deposit requirement.

[3] An agreement memorandum of April 19, 1945, relating to the item of $1,100 advanced by Dr. Pennington and used in payment of the $2,440 judgment, mentions "R. V. Marlin, president and agent of the Better Way Life Insurance Company" and at least inferentially shows that Marlin was borrowing for the Company.

The defense, if established, would have prevented rendition of judgments, or if advanced in a timely manner would have required that they be set aside; but, since judgments not void on the face of the record may not be attacked collaterally, the method of avoidance undertaken in this proceeding cannot prevail.

*Second—Availability of the Guarantee Fund*—Appellants correctly say that under Act 137 securities deposited with the Insurance Commissioner are for the benefit of policy holders. However, the second subdivision of Sec. 3 of the Act, after permitting use of money realized from the sale of stock, its surplus, or its undivided profits as a guarantee fund, provides that ''[the guarantee deposit] . . . in every event . . . shall be considered an asset and a part of the insurance fund of the corporation.'' Section 13, permitting dissolution and relinquishment of business when statutory notice has been given, reads: ''After such publication [the Insurance Commissioner] shall deliver up to said corporation the securities or any portion thereof . . . belonging to such corporation, *upon being satisfied that all debts and liabilities of every kind are paid or provided for.*''

Clearly the deposit fund is an asset of the Company, pledged in the first instance to payment of policies, but available secondarily to pay debts. While this was not a matter to be adjudicated by the Court from which this appeal comes, appellants urge the point here in support of their contention that facts in avoidance were of a nature to deprive Poinsett Chancery of jurisdiction, hence the decree is void.

Since the Court was not without power to foreclose, and no procedural errors are shown, the decree must be affirmed.