**Nazih Joseph KATTER, et al., Appellants,**

v.

**ARKANSAS LOUISIANA GAS CO. and Arkla Exploration Co., Appellees.**

No. 84–2157.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1985.

Decided June 21, 1985.

H. Derrell Dickens, El Dorado, Ariz., for appellants.

Jerry Canfield, Fort Smith, Ariz., for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and ROBERTS,* District Judge.

ROSS T. ROBERTS, District Judge.

Appellants, members of the Katter family and attorney H. Derrell Dickens, seek damages from Appellees Arkansas Louisiana Gas Co. and Arkla Exploration Co. ("Arkla"), claiming that the latter have failed to pay all sums due in connection with production from a natural gas well. The district court[1] granted Appellees' motion for summary judgment. We affirm.

## FACTS

The Katter family has at all relevant times owned an undivided ½ interest in the oil, gas and other minerals underlying 38.5 acres of land located in Sebastian County, Arkansas. The family has resided in Beirut, Lebanon, since the 1940's.

In February, 1979, Arkla sought to begin drilling for oil on a section of land in Sebastian County. That section included the 38.5 acres in which the Katters hold their mineral interest. Having entered into leases with the other property owners, but allegedly being unable to locate the Katters, Arkla applied to the Arkansas Oil and Gas Commission ("Commission") for an "integration order." The issuance of such an order involves a procedure authorized by Arkansas statutes in connection with "unit drilling" of all or a portion of a common source of oil or gas when some owners fail to integrate their interests voluntarily. *See Ark.Stat.Ann.* §§ 53–114 *et seq.;* and *see generally Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942).

---

* The HONORABLE ROSS T. ROBERTS, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

The Commission scheduled a hearing on the application for February 20, 1979. Arkla published notice thereof in a newspaper in Sebastian County pursuant to *Ark. Stat.Ann.* § 53–115 D, and the Commission mailed a notice to the Katters in care of the American Embassy, Beirut, Lebanon (alleged to be the Katters' last known mailing address). The Katters deny ever receiving that notice.

At the hearing, the Commission satisfied itself that sufficient effort had been made to locate and give notice to the Katters, and accordingly proceeded to the merits of the application. After taking evidence, the Commission issued an integration order (dated February 21, but by its terms not effective until March 5) which gave the Katters until March 20, 1979, to elect one of three alternatives. The two alternatives pertinent here were the first, which provided for a lease with a per acre bonus and a one-eighth royalty, and the second, which allowed the Katters to participate as working owners if they bore their proportionate share of the costs. The order further provided that if the Katters did not respond by March 20, it would be assumed they had chosen alternative one. The order was mailed to the Katters—as the notice of hearing had been—in care of the American Embassy in Beirut.

On March 23, 1979, the Katters responded by telexing the Director of the Commission, from Beirut, in the following terms:

> The Embassy called me today March 23, 1979. I have read your offer. We are considering Alternative Two but do not have a copy of APPL No. 610. Please advise by telex … if you encourage us on this decision. That is Alternative Two. If you do not advise on Alternative Two we will agree on Alternative One. Also advise by telex.

The Director replied on March 27, explaining that an election no longer existed and that under the terms of the order an election of alternative one was "assumed." The Katters made no response.

On April 5, 1979, Arkla itself wrote to the Katters, referencing the Director's March 27 letter and requesting that the Katters complete an enclosed form so that the bonus provided for under alternative one could be paid. The Katters did not reply.

In May, 1979, the Katters retained attorney H. Derrill Dickens to advise them in connection with their mineral interests in Sebastian County.[2] On May 15, Dickens wrote Arkla (making reference to the Commission's order), requesting assistance with respect to recording information on the Katters' mineral interests, inquiring as to plans for the well or production specifics if it was already in production, and thanking Arkla for its help. No dissatisfaction with the Commission's order or desire to participate on a working basis was expressed. Arkla responded by furnishing a copy of an attorney's title opinion covering the land in question, although it said nothing concerning its plans for the well.

Arkla commenced drilling in November, 1979, and a producing gas well was put on pipeline as of April 21, 1980. According to Dickens, he had no knowledge of those facts until late April or early May, 1980; and in fact had earlier been told, upon inquiry to the Clerk of the Oil and Gas Commission, that a well had already been drilled, was dry and had been plugged.[3] Even with knowledge of the initial success of the well, however, neither Dickens nor the Katters expressed any complaint over the Commission's order until shortly before the present suit was filed in July, 1983.

The Katters' second amended complaint (upon which the instant judgment was en-

---

**2.** Mr. Dickens acquired a one-half interest in the Katters' mineral interest in May, 1980, and hence became a plaintiff in this lawsuit and an appellant here.

**3.** A previous integration order (of which the Katters state they had no knowledge) had been issued in 1977. A dry well had in fact been drilled under that order, and abandoned. It was apparently that well to which the Clerk of the Commission made reference, although the two wells had different designations.

tered) sought money damages based upon Appellees' alleged failure to pay the amount the Katters would have received (said to be $738,562.50) as participating, working owners (the second alternative of the Commission's order). Apparently recognizing the difficulty posed by the order, however, the Katters included an allegation that the order was invalid by virtue of the alleged fact that they had never been "validly served with summons or notice" of the February 20, 1979 hearing. Appellees moved for summary judgment, suggesting, among other things, that the action was barred by laches, waiver or estoppel.

Characterizing the complaint as one seeking "to set aside an order of the Arkansas Oil and Gas Commission ... and to obtain an accounting," the District Court concluded that the relief sought was in fact equitable in nature.[4] Proceeding from that point, the court further concluded that the action was barred by laches, in part because the Katters had delayed their suit until it was clear the well was producing, and in part because two important witnesses with respect to Arkla's efforts to locate the Katters were no longer available.

### DISCUSSION

■ The parties have debated at length over whether the District Court was correct in treating the action as equitable, and hence in applying the doctrine of laches to it. We agree with the Katters' argument in that connection. While we sympathize with the District Court's difficulty in categorizing the matter, we accept the claim simply as it was pleaded: an action solely

for money damages, albeit involving a so-called "collateral" attack upon the Commission's order. *See Mitchell v. Village Creek Drainage Dist.,* 158 F.2d 475, 477–78 (8th Cir.1947) (under Arkansas law, if an action has an independent purpose and contemplates some other relief, although the avoidance or overruling of a judgment may be important or even necessary to its success, the attack on the judgment is collateral); *Purser v. Corpus Christi State Natl. Bank,* 256 Ark. 452, 508 S.W.2d 549, 553 (1974); *Cassady v. Norris,* 118 Ark. 449, 177 S.W. 10, 13 (1915); and *see also Restatement (Second) of Judgments* § 65, Comment *b,* § 80, Reporter's Note (1982); *Restatement (First) of Judgments* § 11 (1942).[5] We believe, however, that the judgment below must nonetheless be affirmed on other—although closely related—grounds.

■ First, no matter how the Katters might wish to posture the case, the Commission's order is clearly a bar to the damages they seek unless its effect can somehow be avoided. The Arkansas statutes creating the Commission and establishing its authority specify that such an order "shall be effective as to and binding upon each person owning an interest in the unit area, or in oil and/or gas produced therefrom or the proceeds thereof." *Ark.Stat. Ann.* § 53–115 C–2(c). Those statutes also provide that the order may be made only upon application of an interested party, after notice and upon a public hearing, *see generally Ark.Stat.Ann.* § 53–115 C–2; set forth detailed requirements for the content of the order, *id.;* and create a right of judicial review, *see Ark.Stat.Ann.* § 53–

---

4. The District Court apparently felt that an allegation concerning the invalidity of the order compelled this result, although the Katters' own briefing on the motion (suggesting agreement with the idea that the action was in some respects *equitable)* may certainly have influenced matters. Indeed, the Katters have shown a remarkable flexibility, even on appeal, in their view of the action, characterizing it, variously, as one for conversion, as a dispute over title to realty, and as an effort to set aside a "part" of the Commission's order, not to mention of course the theory actually pleaded.

5. Whether, under Arkansas law, the issues posed by that collateral attack would create a separate, equitable question, internal to the suit, *see Restatement (First) of Judgments, supra* § 112, Comment *e,* is a question we need not decide here, given our alternative disposition of the case and our doubt that laches, in a strict sense, would serve to bar relief from the order in any event. *See* text *infra.*

117. Clearly the Arkansas legislature intended an adjudicatory, *in rem* order which, when final, would have all the force and effect of a court judgment; and in fact required and provided for all the things necessary to give it that effect. *See United States v. Utah Constr. & Min. Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966). In general, then, such an order would fix the parties' rights and duties as fully and finally as a court judgment—albeit here a default judgment—and would be entitled to the same full faith and credit and preclusive effect. *See United States v. Utah Constr. & Min. Co., supra; United Farm Workers v. Arizona Agr. Employment*, 669 F.2d 1249, 1255 (9th Cir. 1982); *Restatement (Second) of Judgments, supra* § 83; 4 *Davis, Administrative Law Treatise* §§ 21:2, 21:9 (1983).

Second, even if we assume the order was void on its face,[6] we believe the granting or refusing of relief from that order (whatever the form of such relief) was controlled by the principles outlined in section 66 of the *Restatement (Second) of Judgments, supra;* and *cf. id.*, pp. 138–44, 152–54.[7] As the comments to section 66 suggest, even where such a judgment is attacked "collaterally" in a separate action which itself involves only a claim for money damages, relief from that judgment may be refused, in appropriate circumstances, under principles essentially equivalent to those of equitable estoppel.[8] *Id.*, Comment *a;* and *see*

*also* § 65, Comment *c,* § 80, Reporter's Note. There is, of course, nothing unusual about this importation of an estoppel defense into an action "at law," even if we consider the attack on the order in that context; that proposition has long been accepted even in those jurisdictions which, like Arkansas, continue to maintain separate law and equity courts. *People's F. Ins. Assoc. v. Goyne*, 79 Ark. 315, 96 S.W. 365, 368 (1906); 28 *Am.Jur.2d*, Estoppel and Waiver § 134 (1966); *Dobbs, Remedies* 44 (1973).

■■■ Having said this much, we pause briefly to note our doubt concerning an application of the doctrine of laches, *as such*, to any attack upon the order itself. Although laches and estoppel are closely related, and in any given case may involve some of the same considerations, they are not synonymous. 28 *Am.Jur.2d, supra* § 32. At least in the sense that it focuses simply upon the timeliness of a request for relief, as opposed to the judgment debtor's conduct in reference to the judgment and the judgment holder's detrimental reliance upon the judgment (estoppel), laches is not generally recognized as a basis for refusing relief from an invalid (void) default judgment. *See* 11 *Wright and Miller, Federal Practice and Procedure* § 2862, at 197–98 (1973), and cases collected therein; and *cf. Restatement (Second) of Judgments, supra* § 65, Comments *b* and *c,* § 66, Comment *b.* We may, however, af-

---

6. Under Arkansas law, a judgment is subject to collateral attack only if it is void "on its face." *Marlin v. Harrison*, 214 Ark. 342, 216 S.W.2d 45, 47 (1949); *Allison v. Bush*, 201 Ark. 315, 144 S.W.2d 1087, 1088 (1940); *Reed v. Futrall*, 195 Ark. 1044, 115 S.W.2d 542, 545 (1938). Apart from the notification requirements of *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983) (notice mailed to last known address), and similar Supreme Court decisions, the order here is clearly valid "on its face," *see generally Woolfolk v. Davis*, 225 Ark. 722, 285 S.W.2d 321, 324 (Ark.1956); and given the Commission's findings (*see* Finding of Fact # 4) and the presumptions followed by the Arkansas courts in that respect, *see Frazier v. Merrill*, 237 Ark. 242, 372 S.W.2d 264, 267 (Ark.1963), we doubt the order could be considered void "on its face" even with regard to those latter requirements.

7. In a diversity case such as this, we believe state law would ordinarily govern the circumstances under which relief in the course of a "collateral" attack upon a state court judgment might be refused. Although we find no Arkansas case law in point, we view *Restatement* § 66 as persuasive general authority and feel confident the Arkansas courts would apply its principles.

8. As the *Restatement* points out, the theory is not that a void judgment has somehow become valid, as such; rather, as a result of the parties' conduct in connection with the judgment the judgment debtor is held estopped to assert that invalidity.

firm on any ground supported by the record, even though that ground was not directly addressed (or, in fact, addressed at all) in the court below, *Brown v. St. Louis Police Dept., Etc.*, 691 F.2d 393, 396 (8th Cir.1982); and since we believe the principles set forth in *Restatement* § 66 compel such an affirmance here, we return to that subject.

As provided by section 66:

Relief from a default judgment on the ground that the judgment is invalid [as by a failure to give notice of the proceedings] will be denied if:

(1) The party seeking relief, after having had actual notice of the judgment, manifested an intent to treat the judgment as valid; and

(2) Granting relief would impair another person's substantial reliance on the judgment.

As to the first element, we take the phrase "manifested an intent" to refer to conduct by the judgment debtor (written, verbal or otherwise) which creates an appearance of the necessary intent and as to which the judgment debtor knew or had reason to know that the judgment holder (or another affected party) might infer such intent. *See,* by analogy, *Restatement (Second) of Contracts* § 19 (1979). We believe the terms of the Katters' March 23 telex, particularly when coupled with the lack of any complaint about the order in their attorney's subsequent communications with Arkla, fully satisfy that element. We further believe the undisputed evidence clearly reflects the fact of Arkla's substantial reliance upon the order (it drilled the well, and shouldered the entire risk of the venture in doing so), as well as the impairment of that reliance which would occur if the order were set aside now. The second element of the test is thus also met.

Nor are we moved, any more than was the District Court, by the fact that Mr. Dickens was at one point told by the Clerk of the Commission that a well had already been drilled and abandoned, or by the fact that Dickens did not learn to the contrary until shortly after the well had been brought in. It does little to advance the Katters' position to suggest that, having let Arkla take the risk of the venture and believing it to have wasted its money in that respect, they should be allowed to reverse fields upon learning otherwise. Further, as Appellees point out, at the time the Katters did learn of the well's initial success a risk of loss was still present, since the well was unproved and might deplete rapidly. The Katters nevertheless waited three more years before making any complaint about matters.[9]

Summary judgment, of course, may not be granted unless the movant, upon the undisputed facts, is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. The test in that regard is whether, upon those same facts at trial, the movant would be entitled to a directed verdict. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944); *Roberts v. Browning*, 610 F.2d 528, 532 (8th Cir.1979); *Kern v. Tri-State Ins. Co.*, 386 F.2d 754, 756 (8th Cir.1967). We see that test as met here with respect to any application of *Restatement* § 66; and if relief is not granted from the Commission's order, the claim itself must necessarily fail. Indeed, in that sense the entire claim is subject to the defense of estoppel.

The judgment below is affirmed.

---

**9.** Apparently the Katters were involved—in separate proceedings—in quieting title to their mineral interests during some of this time. This furnishes no excuse, however, for continuing to leave the impression that they found the Commission's order acceptable.