## FIRST NATIONAL BANK IN BROOKINGS, Appellant,

v.

## UNITED STATES of America, Appellee.

### No. 86–5402.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Sept. 30, 1987.

Rehearing Denied Nov. 4, 1987.

Sean M. O'Brine, Brookings, S.D., for appellant.

Bonnie P. Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and MURPHY,[*] District Judge.

DIANA E. MURPHY, District Judge.

This case concerns a claim that a United States probation officer negligently failed to record or deliver a deed of trust. First National Bank in Brookings (the Bank) sued under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680, to recover a loss it attributes to the alleged negligence. The district court[1] granted the government's motion for summary judgment, ruling that the Bank's claim was barred by the two-year statute of limitations in 28 U.S.C. § 2401(b). The Bank contends on appeal that disputed issues of material fact prevented summary judgment, that its claim was timely filed, and that it should have been permitted to depose the probation officer. For the reasons set forth below, we affirm.

## I. BACKGROUND

This case arose from the Bank's dealings with one Wilford N. Boerger. Boerger was convicted in federal court in South Dakota for making a false statement on a loan application submitted to the Bank, in violation of 18 U.S.C. § 1014. He was sentenced on August 13, 1976 to two years of

---

[*] The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by designation.

[1] The Honorable Fred J. Nichol, Senior United States District Judge for the District of South Dakota.

imprisonment. The execution of the sentence was suspended, and he was placed on probation for a period of five years. As a condition of probation, he was required to make restitution to the Bank and to another individual. He failed to do so. On May 14, 1981, his probation was revoked, and he was committed to the custody of the Attorney General for a period of two years.

Boerger moved for reduction of his sentence on June 1, 1981. In support of the motion, Boerger and his wife executed a promissory note in favor of the Bank in the amount of $19,977.25. The note was secured by a deed of trust on a piece of land in Missouri owned by the Boergers. Arrangements were also made for the Lakeland State Bank in Sunrise Beach, Missouri to transmit payments on the note to the First National Bank in Brookings. In addition, Boerger agreed to pay $500 restitution to the probation office each month from June to August 1981. The motion for reduction of sentence was granted on June 1, 1981, and the court ordered that Boerger was to be released from custody in the middle of August 1981.

The deed of trust Boerger executed to secure the promissory note is the document on which the Bank bases its negligence claim. The Bank asserts that United States Probation Officer Charles B. Mandsager breached a duty to record or deliver the deed.

Boerger's attorney, David V. Vrooman, delivered the original copies of the promissory note and the deed of trust to Mandsager in connection with the motion to reduce sentence. The motion itself stated that since May 14, 1981 the note and deed had been deposited "with the probation officer for delivery." Nothing was said in the motion as to whom delivery was to be made or when, nor was anything said about recording. Vrooman also sent copies of the documents to the Bank's attorney, James E. Kessler, on June 2, 1981. Vrooman wrote Kessler that Mandsager had the two instruments and that he "is to deliver" them to the Bank.

Subsequently Kessler and Mandsager corresponded. Kessler wrote Mandsager, on June 10, 1981, that three mortgages had been recorded on the Boerger property in Missouri, and that "my client would want the note and mortgage and does think that perhaps Boerger should be let out and use any earning power." He asked that Mandsager reflect on "the matter" and "take it up with the Judge and/or Dave Vrooman." Nothing was said about recording the deed. Mandsager later sent a letter to Kessler on June 12, 1981 in which he discussed certain aspects of the restitution. On October 2, 1981, Mandsager wrote Kessler that Boerger had made his final restitution payments, enclosed a check for the Bank, and asked Kessler to contact him if he had any questions. The original promissory note and deed of trust remained in the probation office.

The Missouri bank advised the First National Bank in Brookings on February 5, 1982 that Boerger no longer had funds in his account from which to make payments on the note. No action was taken by the Bank, however, until October 3, 1984, when Kessler inquired in a letter to the probation office about the status of Boerger's restitution and whether Boerger had made any payments.[2] The Bank also prepared to foreclose on Boerger's property in Missouri, but it was advised, in a title opinion letter dated November 14, 1984, that its deed of trust had never been recorded. The title letter also stated that an additional deed of trust to secure a promissory note

**2.** Kessler's letter stated:
Mr. BOERGER was to be making restitution payments and I believe at one time even a mortgage and note were signed and so forth with a bank down in Sunrise Beach, Missouri. I would appreciate knowing what the current status of this matter is and if NEAL BOERGER has made any payments or if any payments have been deposited with the Clerk of Courts for restitution.

As noted above, Mandsager's October 2, 1981 letter to Kessler had advised him that Boerger had made his final monthly restitution payments to the probation office. And Vrooman, Boerger's attorney, had sent copies of the note and deed to Kessler on June 2, 1981, also informing him that the original documents had been given to Mandsager.

of $30,000 had been recorded on the property on September 15, 1983. This deed would therefore have priority over the Bank's deed. On November 28, 1984, Kessler wrote to the probation office requesting a search for the deed of trust. In response, the probation office sent the original copies of the promissory note and the deed of trust to the Bank on December 11, 1984.

The Bank subsequently sought relief against the United States. It filed an administrative claim on July 2, 1985, asserting that the United States Probation Office negligently failed to record or deliver the note and the deed of trust. The Bank alleged that this negligence allowed another deed to be recorded prior to its deed, causing it to lose its status as a secured creditor in the Boergers' bankruptcy proceeding. The Bank requested damages of $19,977.25, the amount of the note. On January 3, 1986, the Administrative Office of the United States Courts denied the claim, finding that the probation office had no duty to record the deed of trust and that the Bank was primarily at fault for the failure to record. The Bank filed this action under the Federal Tort Claims Act on March 25, 1986, making the same allegations of negligence and seeking the same damages.

The government moved to dismiss or, in the alternative, for summary judgment, on a number of grounds. The government contended that the complaint failed to state a claim upon which relief could be granted because there is no similar private cause of action in South Dakota and because the probation office owed no duty to the Bank. The government also relied on the discretionary function exception to the FTCA and the statute of limitations.

While the motion was pending, there were communications between the court and counsel concerning the possibility of deposing Mandsager prior to a ruling.[3] In a letter to the district court dated June 13, 1986, the Bank requested an opportunity to depose Mandsager before it responded to the government's motion for summary judgment. The government opposed the request, and the trial court wrote that it would be denied unless the Bank could show that the use of affidavits would be inadequate. In a subsequent letter to the court dated June 25, 1986, the Bank stated that "[t]he reason for th[e] request [for Mandsager's deposition] is due to the fact the defendant is relying upon the discretionary function exception to the Federal Tort Claims Act." The government thereafter withdrew its reliance on the discretionary function exception, and the district court indicated that therefore "we need no further discovery as far as Mr. Mandsager is concerned." Letter dated June 30, 1986.

In a Memorandum Opinion and Order dated September 12, 1986, the district court granted the government's motion for summary judgment. The court found the Bank's administrative claim was filed more than two years after the alleged negligence of Mandsager and that the action was barred by the FTCA's statute of limitations, 28 U.S.C. § 2401(b).[4] The court did not address the other grounds for dismissal.

## II. DISCUSSION

In reviewing a case upon appeal, this court may "affirm on any ground supported by the record, even though that ground was not directly addressed (or, in fact, addressed at all) in the court below." *Katter v. Arkansas Louisiana Gas Co.*, 765 F.2d 730, 734–35 (8th Cir.1985) (citing *Brown v. St. Louis Police Dep't*, 691 F.2d 393, 396 (8th Cir.1982), *cert. denied*, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983)); *see also Stoetzel v. Continental Textile Corp. of America*, 768 F.2d 217,

3. The Bank's motion to supplement the record on appeal with the correspondence between counsel and the district court concerning the deposition of Mandsager is granted.

4. 28 U.S.C. § 2401(b) provides:
A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

222 (8th Cir.1985). This court's consideration is therefore not limited to the statute of limitations issue.

■ The FTCA provides "both a waiver of sovereign immunity and a jurisdictional grant of authority to the courts to hear certain tort claims against the government." *Bonuchi v. United States,* 827 F.2d 377, 378–79 (8th Cir.1987) (citations and footnotes omitted). Waivers of sovereign immunity are to be strictly construed in favor of the sovereign. *See Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *Premachandra v. Mitts,* 753 F.2d 635, 641 (8th Cir.1985) (en banc).

■ Under the FTCA, the federal government is liable for any

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).[5] In order to succeed on its claim, the Bank must "allege facts that, under similar circumstances in a state common law tort action, would create a cause of action against a private individual." *Tuepker v. Farmers Home Admin.,* 708 F.2d 1329, 1333 (8th Cir.1983). In other words, the Bank has the burden of establishing that a private individual could be found negligent under South Dakota law under similar circumstances.

A cause of action for negligence requires a plaintiff to prove "facts which give rise to a legal duty on the part of the defendant to conform to the standard of conduct established by law for the protection of the plaintiff." Restatement (Second) of Torts § 328A (1965); *see also Prosser and Keeton on the Law of Torts* § 30 (W. Keeton

5th ed. 1984). In an attempt to satisfy the duty requirement for negligence, the Bank alleges in its complaint that "defendant and its employee had a duty to reasonably protect the interests of the plaintiff and others from damage caused by Mr. Wilford Neal Boerger." Paragraph 4. More specifically, the Bank argues that Probation Officer Mandsager had a duty either to record the deed or to deliver it to the Bank.

The Bank has made no showing that under South Dakota law a private person to whom a deed is given has any duty to record or deliver it. Of course, a special relationship of some sort may impose a duty to take affirmative action to aid or protect others, such as that between a common carrier and a passenger, an innkeeper and a guest, and a possessor of land and an invitee. Restatement (Second) of Torts § 314A (1965). No authority has been cited recognizing any special relationship between a probation officer and the victim of a crime, however.

This court considered a similar alleged duty in *Bergmann v. United States,* 689 F.2d 789 (8th Cir.1982). The plaintiff there alleged that the government negligently selected and supervised an individual in its witness protection program who was subsequently responsible for the murder of her husband. She claimed that the United States Marshals Service was negligent in its supervision, but the court ruled that "the conduct of the marshals service was not negligent because there was not a legal duty to control [the federally protected witness]." *Id.* at 797. The court further noted that "in the absence of a statute, there is no legally enforceable duty on the part of the government to warn or to compensate victims of criminal activity." *Id.* at 796 (citation omitted).[6]

---

5. The scope of liability is restated in 28 U.S.C. § 2674:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

6. Since the restitution provisions of the Victim and Witness Protection Act of 1982 only apply to offenses occurring on or after January 1, 1983, it is not necessary to consider any possible impact of that statute. *See* Pub.L. No. 97–291, § 9(b)(2), 96 Stat. 1248, 1258 (1982).

In this case, just as in *Bergmann,* there is no legally enforceable duty on the part of the government or its probation officer. There was no duty owed by Mandsager to the Bank to record the deed of trust, and the Bank has never alleged that Mandsager agreed to record the deed or even that its representatives explicitly asked him to do so. A duty to record the deed could have conceivably arisen if Mandsager had voluntarily undertaken that responsibility. *See Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955) ("[O]nce [the Coast Guard] exercised its discretion to operate a light * * *, it was obligated to use due care to make certain that the light was kept in good working order * * *."). Nothing of the sort is alleged here. The Bank's president, Robert E. Fishback, states in his affidavit that he "was under the impression and assumed that the original deed had been filed by the probation office with the appropriate Recorders Office in Missouri." Paragraph 7. The Bank's attorney, James E. Kessler, states in his affidavit that Boerger's attorney advised him that Mandsager was to deliver the note and deed to the Bank. Kessler also "assumed that Mr. Mandsager had recorded the Deed of Trust." Paragraphs 13 and 16. As for the alleged duty to deliver the deed, the record shows that the probation office delivered it to the Bank as soon as it asked for delivery. The document presented to the court which mentions the arrangements the Bank and Boerger had worked out—the motion to reduce sentence—did not set forth any delivery instructions. When the Bank finally requested the deed on November 28, 1984, the probation office delivered it shortly thereafter, on December 11, 1984. Un-

der the facts alleged, no cause of action for negligence can be stated under the FTCA.[7]

Neither does any disputed issue of material fact preclude summary disposition. In the district court the Bank sought to depose Mandsager because of the defense, later withdrawn, of discretionary function. On appeal it claims there are disputed issues of material fact relating to the government's statute of limitations defense. These issues are said to relate to "the date of injury, and the time [the] Bank actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of its injury." Appellant's Brief at 10. The defense now being considered, however, is that the allegations fail to state a claim under the FTCA. The Bank has not shown disputed issues of material fact relevant to that defense. The Bank's failure to establish that Mandsager or the probation office had a legally enforceable duty makes any other disputed fact immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). In view of this failure and the government's withdrawal of the discretionary function exception defense, prior opportunity to depose Mandsager was not necessary.

Since there was no legally enforceable duty owed by the probation office or Mandsager to the Bank, the Bank has failed to state a claim under the FTCA. It is therefore unnecessary to discuss other issues raised by the parties. The judgment in favor of the government is affirmed.

---

**7.** It is also doubtful that the Bank could satisfy the causation requirement for negligence in respect to this defendant. *See* Restatement (Second) of Torts § 328A (1965) (Plaintiff has the burden of proving that defendant's failure to conform to the required standard of conduct "is a legal cause of the harm suffered by the plaintiff."). The Bank alleges in its complaint that it does not have a perfected lien on the property "[a]s a direct and proximate result of Mr. Mandsager's failure to record the Promissory Note and Deed of Trust * * *." Paragraph 12. The

record indicates, however, that the Bank's attorney was aware that the deed had not been recorded nearly three weeks after it was executed in May 1981 and that the Bank learned in February 1982 that Boerger's Missouri bank account could no longer provide payments on the note. The Bank took no action at either time to ensure that the deed was recorded. The Bank's interest was not adversely affected until September 15, 1983, when another deed of trust was recorded.