244 N.J. Super. 402 (1990)
582 A.2d 1006
CITY OF NEWARK OF THE COUNTY OF ESSEX, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
(497) BLOCK 1854, LOT 15, 9-11 SOUTH 7TH STREET, CHIQUITA REALTY, INC., (498) BLOCK 1854, LOT 17, 13-17 SOUTH 7TH STREET, CHIQUITA REALTY, INC., DEFENDANT-APPELLANT, AND ROLAND FOGLIA, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1990.
Decided November 9, 1990.
*404 Before Judges BILDER and BROCHIN.
James A. Key, Jr. argued the cause for appellant (James A. Key, Jr., attorney; James A. Key, Jr., on the brief).
Lewis M. Markowitz and Lorraine K. Wilson argued the cause for respondent Roland Foglia (Epstein, Epstein, Brown & Bosek, attorneys; Lorraine K. Wilson, on the brief).
Brief of respondent, City of Newark of The County of Essex was suppressed.
The opinion of the court was delivered by BROCHIN, J.A.D.
Pursuant to R. 4:50, Chiquita Realty, Inc. moved to vacate a judgment entered in accordance with the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq., which foreclosed its equity of redemption in two parcels of real estate, lots 15 and 17 in Block 1854 in the City of Newark. Chiquita Realty, Inc. claimed that, in violation of its rights to due process of law guaranteed by the state and federal constitutions, it was never served with the tax foreclosure complaint and that the resulting judgment was therefore void for lack of notice. The motion was presented to Judge Murray G. Simon and decided on the basis of affidavits, without an evidentiary hearing. For purposes of his decision, the judge assumed that the complaint for foreclosure had not been served on Chiquita Realty, Inc. He denied the motion to vacate, holding that Chiquita Realty, Inc. and its sole stockholder, Mr. Robert Powlett, were estopped from successfully challenging the judgment.
Chiquita Realty, Inc. bought lots 15 and 17 in Block 1854 in the City of Newark from Luis Soto on October 9, 1984 for $20,000. Mr. Soto retained a $15,000 purchase money mortgage. Both properties were subject to unpaid real estate taxes, *405 but Chiquita Realty, Inc. did not make any tax payments. In December 1984, the City of Newark purchased tax sale certificates for unpaid 1983 taxes on the properties. On August 14, 1985, the City commenced a suit pursuant to the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq., and on October 1, 1985 a judgment was entered barring all rights to redeem the properties and adjudicating the City of Newark to be their owner free from all adverse claims. In August 1988, the City sold the properties at auction, and Mr. Roland Foglia was the successful bidder. When Chiquita Realty, Inc. filed its notice of motion, on March 13, 1989, to vacate the foreclosure judgment and to redeem the properties, the parcels were about to be conveyed to Mr. Foglia.
When Chiquita Realty, Inc. bought the properties on October 9, 1984, its president and sole stockholder, Mr. Powlett, knew that unpaid taxes were owed, but he "was not aware that the tax obligation had received a lien status." A few days later, however, his attorney gave him a list of the unpaid taxes, totalling approximately $2,400, and "suggested that I pay the 1983 taxes to avoid a tax sale." But Mr. Powlett did not pay the taxes because he did not have the money, although he "anticipated having the money by the time I received Notice of a Tax Sale from the City of Newark."
According to Mr. Powlett, he first learned that the two parcels had been sold for taxes when, in May 1986, he saw the properties listed in an invitation for bids on real estate owned by the City of Newark. He did not attempt to redeem the properties because, he says, he was unaware that he had the right to do so. Instead, in October 1986, he attended the auction at which they were offered for sale and bid for the properties. He was the successful bidder, he deposited $4200 on account of the purchase price and then forfeited his deposit because he did not have the funds necessary to close. In August 1988, when Lots 15 and 17 in Block 1854 were again offered for sale at auction, Mr. Powlett either bid or prepared to bid, but Mr. Roland Foglia was the successful bidder.
*406 On September 29, 1988, Mr. Foglia signed a contract to purchase the properties. He already owned adjacent property which he had purchased from the City in September 1987. In an undisputed affidavit submitted in opposition to the motion of Chiquita Realty, Inc., Mr. Foglia states that he intends to use lots 15 and 17 together with the adjacent property as the site for a soft drink distribution business. He says that he has spent most of his time during the past eight or nine months preparing to commence operation of the business. He claims that in anticipation that he would be able to close his most recent purchase from the City, he bought two trucks for $15,000, contracted to buy a forklift for $5000, and spent additional money for mortgage, appraisal and advertising fees and survey costs.
As its principal argument in support of its appeal, Chiquita Realty, Inc. contends that the denial of its motion to vacate the foreclosure judgment and to redeem its properties violates the rules enunciated by the United State Supreme Court in Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950) and by the New Jersey Supreme Court in Township of Montville v. Block 69, Lot 10, 74 N.J. 1, 376 A.2d 909 (1977). Alternatively, Chiquita Realty, Inc. argues that upholding the foreclosure judgment would be inequitable even if it were constitutionally permissible. In addition, it asserts as grounds for reversal that one of the partners in the law firm representing Mr. Foglia "very probably had represented" Chiquita Realty, Inc. "in this matter," that the trial judge was guilty of "injudicious and intemperate behavior and clear bias" against it, and that its cause suffered from "ineffective representation by counsel." We disagree with each of these arguments and therefore affirm.
Mennonite Board of Missions v. Adams, Mullane v. Central Hanover Bank & Trust Co., and Township of Montville v. Block 69, Lot 10, do not give Chiquita Realty, Inc. the right to *407 vacate the foreclosure of its equity of redemption. Insofar as pertinent to the present case, these decisions hold only that if a lawsuit or similar proceeding may materially affect the substantial interests of parties whose identities and whereabouts are ascertainable by reasonably diligent efforts, due process requires that they be given "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mennonite, 462 U.S. at 795, 103 S.Ct. at 2709, 77 L.Ed.2d at 185 (quoting Mullane, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873).
The trial court assumed for purposes of its decision that Chiquita Realty, Inc. had not received notice of the foreclosure suit. If the company had applied for relief with reasonable promptness after learning that Newark was offering its properties for sale, or if it had at least applied before the rights of a contract purchaser had intervened, it surely would have been entitled to have the judgment vacated and to redeem its properties. See, e.g., Jefferson Tp. v. Block 447A, Lot 10, 228 N.J. Super. 1, 7-9, 548 A.2d 521 (App.Div. 1988). Its right to redeem would have been subject to no greater burden than if it had acted promptly after receipt of proper notice of the commencement of the foreclosure suit. See Berger v. Paterson Veterans Taxi Service, 244 N.J. Super. 200, 204-206, 581 A.2d 1344 (App.Div. 1990). Cf. Peralta v. Heights Medical Center, Inc., 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (holding that due process clause required vacating a default judgment where there was improper notice, regardless of defaulting party's lack of meritorious defense). Compare Jefferson Tp. v. Block 447A, Lot 10, 228 N.J. Super. at 7-9, 548 A.2d 521 (holding that due process requires municipality to mail notice of tax foreclosure action) with Last v. Audubon Park Assocs., 227 N.J. Super. 602, 548 A.2d 236 (App.Div. 1988), certif. den. 114 N.J. 491, 555 A.2d 613 (1989) (holding that mortgagee who failed to file for timely relief could not challenge tax foreclosure judgment as invalid for lack of notice) and Garza v. *408 Paone, 44 N.J. Super. 553, 131 A.2d 32 (App.Div. 1957) (holding that party could not challenge a default judgment for lack of personal jurisdiction where application was untimely). The Mennonite line of cases do not deal with a situation like that involved in the present case where a claimant waited almost three years after learning that its properties had been acquired by the City, acted in a manner that appeared to concede the validity of the judgment which had divested it of its property, and attacked that judgment only when the property was about to be conveyed to a contract purchaser. In view of these facts, if we were now to permit the City's title to be defeated, we would be seriously impairing the efforts of municipalities to collect their tax revenues. Due process does not require that result.
As the United States Supreme Court stated in Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), "the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." 456 U.S. at 704, 102 S.Ct. at 2105, 72 L.Ed.2d at 502. In the present case, the substantial issue for our decision is whether its facts constitute an adequate reason why Chiquita Realty, Inc. should "be estopped from raising the issue" of Newark's failure to provide it with formal notice of the suit to foreclose its equity of redemption. We hold that they do.
The principle of § 66 of the Restatement (Second) of Judgments (1982), supports our ruling[1]. That section states:

*409 Relief from a default judgment on the ground that the judgment is invalid will be denied if:
(1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and
(2) Granting the relief would impair another person's substantial interest of reliance on the judgment.
The relevant comments to § 66 read as follows:

a. Rationale. Although the parties to an action may not endow an invalid judgment with validity as such, it has long been recognized that under certain circumstances relief may be denied against a judgment that was rendered without the requisites of validity.... The essential point is that parties to a dispute may resolve it not only by adjudication but by contract or concord, express or implied by conduct giving rise to an estoppel....

b. Manifestation of intent. There are various forms by which acceptance of the terms of an invalid judgment may be manifested.... [including] that form of conduct often referred to a "acceptance of benefits," wherein the defaulting party conducts his own affairs on the basis of rights accorded him by the terms of the judgment. In some instances, the party against whom the judgment was rendered may in subsequent events be placed in a position where he would be expected to deny the effect of the judgment but does not do so. His failure to protest the judgment in such a situation can be taken as an affirmation of the judgment because the circumstances invited an expression of a contrary position....
Comment b to § 66 of the Restatement gives the following illustration of its application which is pertinent to our case:
A brings an action against B for settlement of accounts and division of property jointly owned by them. Inadequate notice is given to B. Judgment by default is entered, of which B becomes aware.... After the judgment, B pays taxes on only that portion of the property that was apportioned to him under the judgment. Under applicable law B would be liable for taxes on the whole of the property if he were still its joint owner. This may be regarded as sufficient manifestation by B of an intention to treat the division of property by the judgment as binding on him.
Restatement (Second) § 66 Comment 6, illustration 2.
The rule of § 66 of the Restatement (Second) of Judgments was applied in Katter v. Arkansas Louisiana Gas Co., 765 F.2d 730 (8th Cir.1985). (Katter was decided after Mennonite *410 and cites the Supreme Court's opinion in that case.) The Katters were owners of interests in land which was about to be the site of exploratory drilling for oil. The Arkansas Oil and Gas Commission conducted a hearing to determine how they would share in any revenue which result from the drilling and from the discovery and extraction of oil. Under Arkansas law, an order of the Commission was entitled to the same effect as the judgment of a court. Following a hearing, the Commission issued an order which accorded the Katters a choice among three alternative methods for sharing in the potential costs and profits of oil extraction on their property. The order provided that a designated method would be adopted by default if the Katters failed to make their election before a certain date. Notice of the hearing was mailed to the Katters at their last known address, care of the American Embassy, Beirut, Lebanon. The Katters denied receiving the notice.
After the commission had reached its decision without their participation, a copy of its order was sent to the Katters in care of the Embassy in Beirut. They answered by telex, requesting additional information and adding that if they received neither the information nor contrary advice from the Commission, they would elect the default option. The Commission responded that they no longer had a choice and that the default option would be in effect.
Shortly thereafter, the Katters retained an attorney. To obtain information about their mineral interests, he corresponded with the drilling company, but made no complaint about the Commission's order. Approximately three years later, when the intervening events had disclosed that an alternative other than the default option would have been more profitable, the Katters commenced suit to set aside the order of the Commission on the ground that it had been entered without their having received notice of the proceeding.
The Court of Appeals affirmed the District Court's refusal to vacate the Commission's order. Adopting the principle of § 66 of the Restatement, the Eighth Circuit Court of Appeals said:

*411 we take the phrase[2] "manifested an intent[ion]" to refer to conduct by the judgment debtor (written, verbal or otherwise) which creates an appearance of the necessary intent and as to which the judgment debtor knew or had reason to know that the judgment holder (or another affected party) might infer such intent.... We believe the terms of the Katters' .. . telex, particularly when coupled with the lack of any complaint about the order in their attorney's subsequent communications with [the company doing the drilling], fully satisfy that element. We further believe the undisputed evidence clearly reflects the fact of [the drilling company's] substantial reliance upon the order ... as well as the impairment of that reliance which would occur if the order were set aside now. The second element of the test is thus also met. [Emphasis added.]
Katter, 765 F.2d at 735. See also In re Marriage of Ayres, 167 Cal. App.3d 648, 214 Cal. Rptr. 163 (1985) (holding that husband was estopped from denying the validity of a default judgment of legal separation after paying support pursuant to the judgment for many years); cf. Kazin v. Kazin, 81 N.J. 85, 405 A.2d 360 (1979) (holding that husband who participated in wife's obtaining invalid Mexican divorce from her former husband was estopped from attacking the validity of his wife's prior Mexican divorce and from repudiating the obligations which he assumed in marrying his wife).
By the test of § 66 of the Restatement (Second) of Judgments, the facts of our case justify the trial court's holding that Chiquita Realty, Inc. was estopped to challenge the foreclosure judgment. Both Mr. Foglia, the contract purchaser, and the City of Newark relied on Chiquita Realty, Inc.'s conduct which appeared to acquiesce in the validity of the tax title and therefore in the judgment of foreclosure. If Chiquita Realty, Inc. had redeemed its properties before they were offered for sale in August 1988, almost two years after Mr. Powlett learned that they had been acquired by the City, Mr. Foglia would not have bid and would not have made plans and spent money in reliance on being the successful bidder. The City would not have had to offer the properties for sale twice, and it would not have contracted to sell them to Mr. Foglia. It would *412 not have incurred unnecessary administrative burdens, and the properties would have been restored to the tax rolls without the long delay which has ensued. Whatever may have been Mr. Powlett's reason for refraining from challenging the foreclosure judgment until the City was about to deed the properties to the contract purchaser, his abstention from any challenge and his successful but aborted 1986 bid for the properties "manifested an intent to treat the judgment as valid." Restatement (Second) of Judgments, § 66. In the language of Katter v. Arkansas Louisiana Gas Co., Chiquita Realty, Inc. conducted itself in a way which creates an appearance of the necessary intent"; i.e., "an appearance ... [from] which the judgment debtor knew or had reason to know ... the judgment holder (or another affected party) might infer such intent." (Emphasis added.) Katter, 765 F.2d at 735.
Chiquita Realty, Inc.'s remaining arguments, that "while not established as sworn testimony below, ... a partner in the firm of [the contract purchaser's] attorneys ... very probably had represented the appellant in this matter ...," that the trial judge was "injudicious and intemperate" and had a "clear bias against the appellant," and that the "appellant's ineffective representation by counsel" had a "direct and fatal effect" on its cause, are entirely without merit. R. 2:11-3(e)(1)(E).
The order appealed from is therefore affirmed.
NOTES
[1] We do not mean to imply that there are no circumstances other than those contemplated by Restatement (Second) of Judgments § 66 which will estop a party from challenging a judgment entered against him without notice. Whether or not estoppel is consistent with due process and whether or not a party is estopped depend on the facts of the particular case. See e.g. Luster v. Bank of Chelsea, 730 P.2d 506, 510 (Okl. 1986), where the court implies that if the owner of the equity of redemption of property foreclosed for non-payment of taxes had not lacked both proper notice and actual knowledge of the tax title purchaser's suit to quiet title, the resulting judgment would have been valid against the mortgagee, even without formal notice, because it did have actual knowledge of the proceeding.
[2] In Restatement (Second) Judgments, § 66(1).