Argued and submitted February 5, reversed and remanded March 18, 1980

In the Matter of the Probate Estate
of Simeon B. Riddle, Jr., Deceased,
DECKER,
*Petitioner,*
*v.*
WIMAN,
*Respondent.*
(CA 11167, SC 26360)
607 P2d 1370

Richard B. Thierolf, Jr., Klamath Falls, argued the cause and filed briefs for petitioner.

Neal G. Buchanan, Klamath Falls, for respondent.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Linde** and Peterson, Justices.

HOWELL, J.

**Did not participate in this decision

## HOWELL, J.

This proceeding involves the probate of the estate of Simeon B. Riddle, Jr. Mr. Riddle died leaving few assets but several questions of law regarding the Oregon Probate Code. In the probate proceedings, Tonia Wiman, the respondent herein, was declared sole heir of the decedent's estate. Later, Tom Decker, claiming to be an heir of the decedent, petitioned the circuit court to reopen the estate and contended that the circuit court's determination of heirship was invalid. The circuit court denied his petition. The Court of Appeals affirmed, and we granted review.

The facts and procedural history of this case are important because, as we shall explain later, the new Oregon Probate Code, enacted in 1969, applied when this estate was probated. The facts are as follows: On November 5, 1975, after decedent's death, Tonia Wiman filed a petition with the circuit court requesting (1) the appointment of a personal representative of the estate, and (2) declaratory relief that the court determine Wiman to be the illegitimate daughter and sole heir of the decedent.

On November 6 the circuit court issued an order admitting the estate to probate, appointing the personal representative, and ordering the court clerk to

" * * * issue a Citation directed to: Rose Williams (Riddle), Angie Tecumseh, Christine Allen and Raymond Riddle, Jr., brothers [sic] and sisters of the decedent and all other individuals known or unknown who may claim to be heirs of the decedent, requiring them to appear and set up their claims as heirs or to show cause why Tonia Marie (Cannady) Wiman, should not be declared to be the sole heir at law of the decedent."

The citation was published for four consecutive weeks. In addition, the sheriff filed with the court certificates of personal service of the above citation on the four named siblings of the decedent.

[689]

On December 12, 1975, the circuit court, after no appearances were made in objection to Wiman's petition, decreed that Wiman was the illegitimate daughter and only lineal descendant of the decedent. Finally, on July 26, 1977, the court approved the accounting of the personal representative and ordered the estate closed.

In August of 1977, Tom Decker filed a petition for (1) an order to set aside the order determining heirship and (2) an order redetermining heirship. On November 7, he filed an amended petition to reopen the estate. Decker alleged that he was the husband of Melba Ann Decker, a sister of the decedent who died subsequent to the death of Riddle. He contended that Wiman, according to a birth certificate on file with the state, is not the daughter of or any relation to the decedent, and he requested that the court redetermine heirship in favor of decedent's siblings and himself.

Wiman filed a "plea in bar" alleging that the prior determination of heirship in favor of Wiman was res judicata to any efforts to redetermine heirship.

Decker filed a demurrer to Wiman's pleading in bar. He contended, inter alia, that neither Melba Decker nor he was mentioned in, notified of, or bound by the previous proceedings. Because he was not a party to the previous determination of heirship proceeding, Decker argued that he would not be barred from reopening the estate to contest the determination of heirship.

After the circuit court denied his petitions, Decker appealed to the Court of Appeals. He contended that the personal representative failed to comply with any statute governing notice to unknown heirs and that, therefore, the trial court lacked jurisdiction.

The Court of Appeals affirmed, 40 Or App 631, 596 P2d 570, *former opinion adhered to on reconsideration*, 41 Or App 411, 599 P2d 1136 (1979), explaining that Decker failed to prove that the personal representative

did not use due diligence to seek out all the heirs, as required by ORS 111.215(1)(c), one of the general notice provisions of the Oregon Probate Code. On reconsideration, the Court of Appeals ruled that ORS 111.215(1)(c) does not require the personal representative to determine the *identity* of persons entitled to notice.

In his petition to this court, Decker contends that the personal representative should have been required to show the probate court specific facts supporting due diligence in ascertaining the identities and addresses of heirs because the exercise of due diligence before publishing notice is a prerequisite for obtaining personal jurisdiction over those heirs. Decker bases his claim on (1) the Due Process Clause of the Fourteenth Amendment as interpreted in *Mullane v. Central Hanover Bank and Trust Co.*, 339 US 306, 70 S Ct 652, 94 LEd 865 (1950), and (2) the Oregon Supreme Court decision of *Dixie Meadows Co. v. Kight*, 150 Or 395, 45 P2d 909 (1935), in which we held that a court has no jurisdiction over persons improperly served by publication.

We need not reach the constitutional issue raised by petitioner because we conclude that he is entitled to prevail under Oregon statutory law.

According to the Oregon Probate Code (ORS chapters 111, 112, 113, 114, 115, 116 and 117 (enacted in 1969)), any interested person desiring to initiate probate proceedings of the estate of a decedent who died intestate may petition for the appointment of a personal representative. *See* ORS 113.035. The petition must include, among other things, the names, addresses, and relationships of persons who are or would be the decedent's heirs upon his death intestate, so far as known. ORS 113.035(5).

If an heir or personal representative or any interested person has a question regarding heirship rights, that person may request the court to make a determination of heirship. ORS 28.040; 111.095(1). Prior to

1969, under the former probate statutes, that person would have proceeded under ORS 117.510 to 117.560 (repealed by Or Laws 1969, ch 591, § 305) and would have sought a "determination of heirship." In 1969, however, the legislature enacted a new probate code and repealed this determination of heirship proceeding. In its place, the legislature enacted ORS 111.095(2), which provides:

> "A probate court has full, legal and equitable powers to make declaratory judgments, as provided in ORS 28.010 to 28.160, in all matters involved in the administration of an estate, including those pertaining to the title of real property, the determination of heirship and the distribution of the estate."

In the Proposed Oregon Probate Code 10 (Preliminary Draft, 1968), the advisory committee explained that this section would repeal the more limited statutes on "determination of heirship" (ORS 117.510 to 117.560), and allow the probate court to apply broader powers under the Uniform Declaratory Judgment Act (ORS 28.010 to 28.160).

Under ORS 28.040 of the Uniform Declaratory Judgment Act, any person interested in the administration of an estate may seek a determination of heirship. In addition, under ORS 28.110,

> "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. * * *."

Therefore, under the present Oregon Probate Code, a person seeking a determination of heirship may request declaratory relief in a proceeding to which all persons who have or claim any interest must be made parties.

ORS 28.110 requires that a court making a declaration have jurisdiction over all the interested persons prior to any judicial determination of their legal rights. The reason is "to insure in principle the presence [of], or at least service upon, * * * persons who

would be affected legally by the decision." Borchard, Declaratory Judgments 256 (2d ed 1941). Furthermore, Anderson, in Actions for Declaratory Judgments (2d ed 1951), comments:

> " * * * This means that persons whose rights are to be adjudicated must, not only be named as parties to the record, but they must also be served with process or appear in the action, otherwise they are not before the court, and the court has no jurisdiction of their persons." 1 Anderson, *supra* at 298-99.

*Cf. Farmers Ins. Co. v. Lotches*, 276 Or 81, 85-86, 554 P2d 169 (1976); *Stearns v. Commission of Public Docks*, 240 Or 255, 257, 401 P2d 25 (1965); *Stanley, Adm. v. Mueller*, 211 Or 198, 202, 315 P2d 125, 71 ALR2d 715 (1957).

Personal jurisdiction may be obtained by service of summons, by voluntary appearance, or by consent. *State ex rel Karr v. Shorey*, 281 Or 453, 461, 578 P2d 981 (1978). Service of summons is controlled by ORS chapter 15. ORS 15.120 provides that a defendant may be served summons by publication when service cannot be made personally and when

> "* * * the defendant after due diligence can not be found within the state, and that fact appears by affidavit to the satisfaction of the court or judge thereof, * * *."

*See also* ORS 15.130, 15.140. In addition, ORS 15.170 specifically provides for service by publication against "unknown heirs" in the same manner as in actions against nonresident defendants,

> "[u]pon presentation of an affidavit to the court or judge, showing to his satisfaction that the heirs of a deceased person are proper parties to the suit or action, and that their names and residences can not with reasonable diligence be ascertained, * * *."

In *Dixie Meadows Co. v. Kight, supra*, this court construed the predecessor to ORS 15.120, and we held:

> "Resort to constructive service by publication of summons is predicated upon necessity, and if personal service can be effected by the exercise of reason-

able diligence, substituted service is unauthorized: * * *." 150 Or at 402.

There, we concluded that the affidavit for publication of summons, which failed to show what diligence had been exercised or what inquiry had been made, did not comply with the statute. We therefore held that the trial court did not have jurisdiction. *Accord, Kintigh v. Elliott,* 280 Or 265, 269, 570 P2d 659 (1977); *Dickenson v. Babich,* 213 Or 472, 476, 326 P2d 446 (1958).

In our later decisions, we have emphasized that the affidavit supporting the motion for service by publication is jurisdictional. *See, e.g., Kintigh v. Elliott, supra.* With regard to the jurisdictional requirement of an affidavit under ORS 15.120, we have said:

"The whole purpose of the affidavit is to advise the court of existing facts from which he may judicially determine, first, that the case is one in which the legislature has authorized service of summons by publication, * * * and, second, that it is necessary to proceed against the defendant by publication instead of by personal service, * * *." *Dickenson v. Babich, supra* at 479.

The above analysis also applies to ORS 15.170 which requires that a court be presented with an affidavit that the names and addresses of unknown heirs cannot with reasonable diligence be ascertained before a court may permit service of summons by publication.

In the instant case, when Wiman had petitioned the court in November, 1975, to admit the Riddle estate to probate, she combined in her petition a request for the appointment of a personal representative with a request for declaratory relief determining heirship. Apparently she failed to comprehend that, to obtain a declaration regarding an heirship determination, she must initiate a declaratory judgment proceeding in the probate court and, in accordance with ORS chapter 28, she must make all interested persons parties to that proceeding.

[694]

Decker, the husband of Riddle's deceased sister, was an interested person affected by Wiman's petition for declaratory relief determining heirship. Even though Decker may have been unknown to Wiman, he was an "unknown heir" and a proper party to whom Wiman should have served summons by publication in accordance with ORS 15.170, which requires presentation of an affidavit showing due diligence[1] in an attempt to identify and locate any unknown heirs.

In the instant case, Wiman failed to meet the requirements of ORS 15.170. Prior to notifying unknown heirs by publication, she did not present to the court a sufficient affidavit stating that the names and addresses of the decedent's heirs cannot with reasonable diligence be ascertained. *See Ter Har v. Backus,* 259 Or 478, 487 P2d 660 (1971); *Kintigh v. Elliott, supra.* The absence of such an affidavit in the instant case resulted in the failure of the court to obtain jurisdiction over the unknown heirs, such as Decker. *Cf. Kintigh v. Elliott, supra.*

---

[1] ORS 111.215(1)(c), the general notice by publication provision of the Oregon Probate Code, does not apply to the instant case or any declaratory judgment proceeding to determine heirship. ORS 111.215(1)(c) provides:

"(1) Except as otherwise specifically provided in ORS chapters 111, 112, 113, 114, 115, 116 and 117, whenever notice is required to be given of a hearing on any petition or other matter upon which an order is sought, the petitioner or other person filing the matter shall cause notice of the date, time and place of the hearing to be given to each person interested in the subject of the hearing or to his attorney, if he has appeared by attorney or requested that notice be sent to his attorney, in any one or more of the following ways and within the following times:
" * * * * *.

"(c) If the address of any person is not known or cannot be ascertained with reasonable diligence, by publishing a copy thereof once in each of three consecutive weeks in a newspaper of general circulation in the county where the hearing is to be held, the last publication of which shall be at least 10 days before the date set for the hearing.

" * * * * *."

We do not address the question whether an affidavit is required to show due diligence under ORS 111.215(1)(c).

[695]

Accordingly, we hold that Decker's petition to reopen the estate should have been granted.

Reversed and remanded.