A judgment may be void because the court that entered it lacked subject matter jurisdiction. Garner v. Garner , 182 Or. 549, 561-62, 189 P.2d 397 (1948). A party cannot stipulate or consent to subject matter jurisdiction, id. , and the Oregon courts accordingly have recognized that generally a party cannot be judicially estopped from later **402 seeking to set aside a judgment entered without subject matter jurisdiction, Carey v. Lincoln Loan Co. , 342 Or. 530, 534 n. 2, 157 P.3d 775 (2007). As the court observed in Carey , "[j]udicial estoppel generally does not prevent a party to a case from challenging a court's subject matter jurisdiction, even after the party has invoked or consented to jurisdiction of the court." Id. ; see also Wink v. Marshall , 237 Or. 589, 592, 392 P.2d 768 (1964) (same); Garner , 182 Or. at 561-62, 189 P.2d 397 (same).
This court also has described a judgment entered either without personal jurisdiction or as a result of improper service as void. However, unlike subject matter jurisdiction, the defenses of lack of personal jurisdiction and insufficient or improper service will be "waived" if a defendant does not assert them in a timely fashion. See ORCP 21 G(1) (providing that a defendant will waive those defenses if they are not raised either in an ORCP 21 motion or in the first responsive pleading); Decker v. Wiman , 288 Or. 687, 693, 607 P.2d 1370 (1980) (explaining that the defense of lack of personal jurisdiction can be waived by a voluntary appearance or by consent).[8] That is, a defendant may consent to a court's adjudication of his or her obligations and rights even though the court otherwise lacked personal jurisdiction over the defendant *427 or service was improper or insufficient. See id.[9]
For that reason, even though courts have sometimes described a default judgment entered without personal jurisdiction or proper service as "void," they have long recognized that a party may be estopped from seeking to set the judgment aside. Restatement (Second) of Judgments § 66 comment a (1982). As the Restatement explains:
"A judgment purporting to determine the rights of the parties, though lacking effect of its own force because of invalidity, can * * * be adopted as a consensual resolution of **403 the parties' rights. The party who obtained the judgment expresses his [or her] assent to the terms by obtaining the judgment; the other party expresses adherence by some act following the judgment in which the judgment is recognized as determinative."
Id.
Given that rationale, the authors of the Restatement distilled the following rule from the cases:
"Relief from a default judgment on the ground that the judgment is invalid will be denied if
"(1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and
"(2) Granting the relief would impair another person's substantial interest of reliance on the judgment."
Restatement § 66.[10] Sometimes, a party will manifest his or her acceptance of a judgment expressly. Id. comment b. More commonly, a party will manifest his or her intention to treat the judgment as valid either by accepting its benefits or by not denying the validity of the judgment when placed in a position where he or she would be expected to do so. Id. As the comment makes clear, however, "in the absence of such circumstances, silence is not a manifestation of assent." Id.
Consistently with the Restatement , courts have held that manifesting an intention to treat the judgment as valid, coupled with reliance, will bar a party from arguing that the judgment is invalid due to improper or insufficient service. See, e.g. , Price v. Price , 169 N.C.App. 187, 609 S.E.2d 450 (2005) (party judicially estopped from challenging a prior judgment because the service of process was insufficient); MacDougall v. Kutina , 798 So.2d 30, 32 (Fla. Dist. Ct. App. 2001) (party estopped from challenging dissolution judgment on grounds of defective service of process when he later stated at another hearing that he had no problem with paying rehabilitative **404 alimony); City of Newark v. (497) Block 1854 , 244 N.J. Super. 402, 409-12, 582 A.2d 1006 (N.J. Super. Ct. App. Div. 1990) (An owner who did not receive notice of a suit foreclosing its equity of redemption was estopped from challenging the validity of the resulting judgment; the owner's "abstention from any challenge [to the judgment after learning of it] and his successful but aborted 1986 bid for the properties 'manifested an intent to treat the judgment as valid.' ").
To be sure, courts have recognized that delay in contesting the validity of a judgment is not enough, standing alone, to manifest an intention to treat the judgment as valid. Johnson v. State, Dept. of Rev. ex rel. Lamontagne , 973 So.2d 1236 (Fla. Dist. Ct. App. 2008) ; Sprang v. Petersen Lumber, Inc. , 165 Ariz. 257, 798 P.2d 395 (Ariz. Ct. App. 1990). However, they have also recognized that, if a party has manifested such an intention, the party may be estopped from seeking to set the judgment aside for insufficiency of service. Johnson , 973 So.2d at 1239 ; Sprang , 165 Ariz. at 265, 798 P.2d 395.
*428 With those principles in mind, we turn to the facts of this case. We note, as an initial matter, that defendant's attorney (Renshaw) expressly accepted the validity of the default judgment in his discussions with Shriners' attorney (Grant). The trial court reasonably could have found on this record that, when Renshaw spoke with Grant on January 14, 2008, Renshaw acknowledged "the inability of the defendant Mack Woods to set aside the Default Order and Judgment for lack of a meritorious defense." Renshaw was defendant's agent and, as such, had authority to bind defendant in discussing matters within his authority-i.e. , in discussing Shriners' claims against defendant.[11]
Beyond that, defendant affirmatively treated the default judgment as valid when he used it to establish the damages that, he argued, flowed from his former lawyer's malpractice. Defendant did not merely acknowledge the default judgment's existence; he implicitly acknowledged its **405 validity when he asked the jury to rely on it to determine the extent to which his former attorney's failure to file a notice of lis pendens had damaged him. Defendant cannot assert that the judgment is an accurate measure of some or all of the damages that he sustained as a result of a third party's actions without implicitly acknowledging its validity. Nor can it be said that the default judgment was merely a proxy for defendant's obligations under the note. Not only did the default judgment conclusively establish those obligations (and remove the possibility of any defenses to the enforcement of the note), but it imposed additional obligations that were only inchoate in the note. The judgment included attorney fees, court costs, and pre- and post-judgment interest. To put the point simply, defendant's obligations under the note were repayment of $ 137,000 plus accrued interest; by defendant's own calculation in the malpractice action, his obligation under the judgment exceeded $ 221,000.
Defendant's use of the default judgment in the malpractice action is difficult to distinguish from the first illustration in section 66 of the Restatement . That illustration states:
"A brings an action against B for settlement of accounts and division of property jointly owned by them. Inadequate notice is given to B. Judgment by default is entered, of which B becomes aware. In a subsequent negotiation with C, B describes his interest in the property by reference to the terms of the judgment. This may be regarded as a sufficient manifestation by B of an intention to treat the division of property by the judgment as binding on him."
Restatement § 66 illustration 1. Using the default judgment to establish some or all the damages that a third party owes him was a stronger manifestation of defendant's intention to treat the judgment as binding on him than B's description of his property in the illustration.
We also conclude that granting defendant relief in this case "would impair another person's substantial interest of reliance on the judgment." Restatement § 66(2). As noted above, the parties have framed the issue in this case as one of judicial estoppel. Specifically, Shriners has argued, and we agree, that (1) defendant received a benefit in his **406 malpractice claim (he recovered damages that he measured by reference to the default judgment); (2) this proceeding is a different proceeding from the malpractice action; and (3) defendant has taken inconsistent positions in the two proceedings.[12] See Hampton Tree Farms, Inc. v. Jewett , 320 Or. 599, 611, 892 P.2d 683 (1995) (listing those elements of judicial estoppel). *429 We explained in Hampton Tree Farms that judicial estoppel protects " 'the judiciary, as an institution, from the perversion of judicial machinery.' " Id. at 609, 892 P.2d 683 (quoting Edwards v. Aetna Life Ins. Co. , 690 F.2d 595, 599 (6th Cir. 1982) ). It is the court's reliance that the doctrine protects. In this case, the trial court and the jury in the malpractice action (to say nothing of Hill and Hill's insurer) relied on defendant's implicit assertion that the default judgment was a valid measure of the damages that flowed from Hill's malpractice. Defendant can hardly rely on the default judgment in the malpractice action to establish that he owes Shriners the principal amount of the loan, pre- and post-judgment interest, and the attorney fees that Shriners incurred in suing on the note and then seek to have the default judgment set aside to avoid paying Shriners the very funds that he told the court, the jury, and Hill he owed Shriners.
We summarize our conclusions briefly. Other courts have recognized that judicial estoppel can prevent a party from setting aside a default judgment entered without proper service. We agree with those decisions. We also conclude that, in the circumstances of this case, judicial estoppel prevents defendant from seeking to set aside the default judgment. We accordingly reverse the Court of Appeals decision and remand the case to the Court of Appeals so that it can consider the issues that it did not decide initially.
The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further proceedings.

ORCP 21 G(1) does not use the term "waive" in a strict sense. As used in that rule, the term does not refer to the intentional relinquishment of a known right. Rather, it describes the effect of failing to assert the defense (whether known or unknown) of lack of personal jurisdiction or insufficient or improper service in a timely fashion.

Personal jurisdiction and service are related but separate concepts. Figueroa v. BNSF Railway Co. , 361 Or. 142, 146, 390 P.3d 1019 (2017). The former refers to a court's authority to require a defendant to appear and to respond to charges. The latter is the means by which a court exercises that authority over a defendant. Id.

The cases following the Restatement generally have involved defective service, as this case does. In light of this court's decisions stating that a party will not be judicially estopped from moving to set aside a judgment for lack of subject matter jurisdiction, we limit our holding to the issue this case presents: whether a party can be judicially estopped from setting aside a judgment that is invalid because of defective service.

Although Renshaw had been retained to represent defendant in the dissolution proceeding, defendant stated in his sworn declaration that he "believed that Mr. Renshaw was handling the Shriners' situation." Defendant thus manifested his intention to have Renshaw represent him both in the dissolution proceeding and in connection with Shriners' efforts to collect on the note.

Defendant argues on review that he did not take inconsistent positions in the malpractice action and in moving to set aside the judgment aside. We reach a different conclusion. In the malpractice action, defendant held out the default judgment as a valid measure of the damages that he sought to recover from a third party; in the motion to set aside the default judgment, defendant has argued that the default judgment is void and unenforceable.