Submitted on remand from the Oregon Supreme Court May 30, 2019, affirmed January 23, 2020

SHRINERS HOSPITALS FOR CHILDREN,
a Colorado nonprofit corporation; and
Oregon Scottish Rite Clinics,
an Oregon nonprofit corporation,
*Plaintiffs- Respondents,*

*v.*

Michael A. COX,
as Personal Representative for
Mack A. Woods, Deceased,
*Defendant-Appellant,*

*and*

BENNETT, HARTMAN, MORRIS & KAPLAN, LLP;
and Tyler Smith & Associates, P.C.,
*Respondents.*

Clackamas County Circuit Court
CV07110578; A155952

459 P3d 929

In this garnishment proceeding, defendant Woods appeals an order that distributed to others a money award that he was to receive from a judgment. Plaintiffs Shriners sought to garnish the money award to collect on a different judgment. Attorneys, Morris and Smith, each filed challenges to the garnishment, asserting liens on the money award for their legal work in the underlying case that had produced the money award. Woods objected to Morris's lien, disputing the validity and terms of their fee agreement and the reasonableness of the fees, but he never objected to Smith's lien. Months later, the day before the evidentiary hearing on the lien amounts, Woods filed a hearing memorandum in which he argued for reducing both attorneys' liens under the doctrine of equitable recoupment. Woods assigns error to the trial court's refusal to hear evidence on that theory. *Held*: The trial court acted permissibly within the range of its discretion when refusing to hear evidence on Woods's recoupment claim. Woods failed to present that theory in his prior objections that had framed the scope of the garnishment proceedings. Even if Woods's last-minute memorandum could constitute a motion for leave to amend his response to the lien claims, the court did not abuse its discretion in denying the amendment under the circumstances.

Affirmed.

On remand from the Oregon Supreme Court, *Shriners Hospitals for Children v. Cox*, 364 Or 394, 434 P3d 422 (2019).

Susie L. Norby, Judge. (Judgments)

Roderick A. Boutin, Judge Pro Tempore. (Order)

George W. Kelly filed the briefs for appellant.

Richard L. Grant and Richard L. Grant, P.C., filed the brief for respondents Shriners Hospitals for Children and Oregon Scottish Rite Clinics.

Michael J. Morris and Bennett, Hartman, Morris & Kaplan, LLP filed the brief for respondent Bennett, Hartman, Morris & Kaplan, LLP.

Tyler Smith and Tyler Smith & Associates, P.C. filed the brief for respondent Tyler Smith & Associates, P.C.

Before Ortega, Presiding Judge, and DeVore, Judge, and James, Judge.

DeVORE, J.

Affirmed.

**DeVORE, J.**

In this garnishment proceeding, defendant Woods appeals an order that distributed to others a money award he was to receive from a judgment.[1] Plaintiffs Shriners sought to garnish the award to collect on a prior judgment that Shriners had against Woods.[2] Attorneys, Morris and Smith, filed separate challenges to the garnishment, asserting liens on the money award for their legal work in the underlying case that had produced the money award. Woods objected to Morris's lien, challenging the validity and terms of their fee agreement and reasonableness of the fees. Months later, the day before the evidentiary hearing on the lien amounts, he filed a hearing memorandum in which he argued for reducing both attorneys' liens under the doctrine of equitable recoupment. Woods assigns error to the trial court's refusal to hear evidence on that theory. We conclude that the court did not abuse its discretion when proceeding without enlarging the issues to include recoupment. Accordingly, we affirm.[3]

The relevant facts are procedural. Woods retained Morris to bring an action against a prior attorney. Eventually, Woods terminated Morris and retained Smith. Smith tried the case, and a jury returned a verdict for Woods, awarding him economic damages.

Shriners sought to garnish that money award to collect on their past default judgment. Morris and Smith each filed challenges to the garnishment, asserting their priority interests in the money award for attorney liens that they held on the underlying action. Woods moved to

---

[1] This case is on remand from the Supreme Court, *Shriners Hospital for Children v. Cox*, 364 Or 394, 434 P3d 422 (2019), for resolution of issues not reached previously in *Shriners Hospital for Children v. Cox*, 282 Or App 127, 360 P3d 999 (2016).

[2] For clarity, we refer to plaintiffs Shriners Hospital for Children and Oregon Scottish Rite Clinics as "Shriners"; respondent Bennett, Hartman, Morris & Kaplan as "Morris"; and respondent Tyler Smith & Associates, P.C. as "Smith."

[3] Morris challenges another ruling by way of a contingent cross-assignment of error. Because we otherwise affirm, we do not reach that cross-assignment. ORAP 5.57(2).

set aside or modify Shriners' past default judgment, and he challenged their garnishment. He filed a declaration that, in part, averred to the validity Smith's lien but generally "disput[ed]" the lien of Morris.

The trial court held a hearing on Woods's motion and challenge in May 2013. It set the scope of the issues to follow. At that time, both attorneys brought to the court's attention their liens and challenges to Shriners' garnishment. Woods disputed the validity of Morris's fee agreement and the amount of Morris's lien. He said that he had "factual contentions," including "whether that work was authorized" and "whether the agreement was understood and signed." The court permitted Woods to "put [his] objections in writing," and indicated that it would hold an evidentiary hearing on that matter, as well as the issues between Woods and Shriners, in June. Smith noted, and the court acknowledged, that no one objected to his lien.

As promised, Woods filed an objection to Morris's garnishment challenge. He disputed whether he had understood or agreed to the terms of their fee agreement, and he disputed the timeline and circumstances surrounding Morris's termination. Woods asserted that the lien amounts were "not reasonable" and that the services were "not authorized." He claimed that Morris had agreed to "work for free to make up for mistakes he had made."

The parties reconvened at a June hearing. The trial court heard argument regarding the issues pending between Shriners and Woods. Woods requested leave of the court to file a declaration with respect to Morris's lien, and the court granted the request. The court indicated that it would take all the issues under advisement and that it would let the parties know whether it would schedule another hearing or issue a letter ruling.

In July, Woods filed the declaration regarding Morris's lien. He asserted that he had fired Morris at a date preceding the expenses, that Morris continued representing him but later quit, that Morris refused to sue certain attorneys at his request, that he had already paid for the services, and that Morris made mistakes in the representation

and agreed to "make up for [Morris's] own errors * * * for free."[4]

In October, the trial court issued a letter opinion, which it followed with an order. In that initial order, the court ruled on the scope of issues as presented. The court ruled, in relevant part, that Morris's lien was valid and that it would hold an evidentiary hearing to determine the exact amount. The court also ruled that Smith's lien would be set for hearing at the same time "in the event there is any challenge."

Meanwhile, due to a potential conflict of interest, Woods substituted new counsel for Smith, who had still been representing him. In November, Smith notified the trial court of a letter that he received from Woods's new counsel disputing his lien. Smith reminded the court that Woods had sworn, in a declaration, to the validity of the lien and its amount, and that no one had previously objected to his lien in the garnishment proceedings. Smith argued that he had a notice-right to know the basis of the challenge before having to defend against it. He asked that the court "consider whether a challenge to [his] lien has even been presented at all, let alone presented properly."

The evidentiary hearing was scheduled for December 10. The day before the hearing, Woods submitted an "Amended Hearing Memorandum Concerning Relevant Legal Issues." In it, he listed equitable recoupment among "Issues Likely to Arise" at the hearing. Woods indicated that he planned to argue that the attorneys' "various errors * * * may be considered to reduce the charges claimed." Woods provided a very brief summary of errors that the attorneys purportedly committed, as well as a general description of the recoupment doctrine. Woods said the case involved "the

---

[4] Specifically, Woods said:

"Part of the work that Mr. Morris did for me was to make up for his own errors. One specific one of those errors was his failure to recognize that my appeal had been filed timely because the last day to file the appeal was on Sunday so as the court of appeals later ruled the appeal was timely. Mr. Morris realized the mistake too late and we had to appeal that decision which I was under the understanding that he was doing that work for free and it would not cost me anything. Another wrong he did to me was that Mr. Morris changed the amount of damages in my lawsuit down from $434,000 to $321,000 without my consent."

question of whether [he] may invoke the doctrine of recoupment to offset from the fees of Mr. Morris a reasonable amount reflecting Mr. Morris'[s] failure to protect his interests, and offsets from Mr. Smith's fees as well."

The hearing followed the next day. The trial court asked "whether or not the equitable recoupment is a valid subject matter" for the hearing, instructing Woods to provide a "preview" of his argument or a "pre-opening statement." Woods explained the alleged attorney errors, his estimates for recoupment amounts, and his proposed witnesses. The court declined to hear further arguments or evidence on the issue, concluding that it was "not properly before the Court in this matter." The court explained, "[i]t's too tenuous and a proposed presentation on that theory would not be sufficient to accomplish the purpose proposed." It noted that reasonable minds could differ as to the alleged attorney errors and that Woods had no expert testimony to support his claims. The court entered a judgment determining the attorney lien amounts, awarding the remainder to Shriners, and ordering the court clerk to disburse payments accordingly. Woods appealed that judgment.

On appeal and before us on remand is Woods's second assignment of error. He asserts that the trial court erred in "disallowing" his "claim for recoupment" and "refusing" him "the opportunity to call witnesses to prove it." Woods contends that his claim would have been "meritorious," and that the court's decision was "akin to the granting of a Rule 21 motion" in that it barred him "from presenting a case that seems likely to have had merit."[5]

Woods made no formal motion to assert his recoupment claims. However, as we explain, in the context of those proceedings, his request most closely resembles a motion for leave to amend a responsive pleading. Accordingly, we review the trial court's refusal to hear evidence on recoupment as a denial of such a motion. Ultimately, we conclude that the trial court did not err in determining that recoupment was not before it and did not abuse its discretion in denying a request to enlarge the scope of the proceedings.

---

[5] We understand this as a reference to a motion to dismiss for failure to state a claim. ORCP 21 A(8).

As a preliminary matter, we begin by outlining the process for resolving conflicting claims in a garnishment proceeding. Garnishment "is the procedure by which a creditor invokes the authority of a [court] to acquire garnishable property of a debtor that is in the possession, control or custody of a person other than the debtor." ORS 18.602. A debtor can file a challenge to a writ of garnishment, which serves as a response to interpose its objections. ORS 18.700 (debtor's response to garnishment). That response is due 30 days after the delivery of the writ of garnishment. ORS 18.700(2)(b). Similarly, a third party can claim a competing interest in the garnished funds by filing a challenge to the garnishment, interposing its objections and describing its claim. ORS 18.725. Although Oregon statute does not make explicit the mechanism by which a debtor responds to the third party's claim, it is implicit in the process that the debtor may respond in the same way as the debtor would to the initial creditor's garnishment; that is, the debtor may file an objection to the third party's claim to the garnished funds. Presumably, that objection should occur within 30 days of the third party's claim to the funds potentially subject to garnishment. In that way, the various parties frame their competing claims in a manner akin to pleadings typical to civil cases.

The trial court then holds a "summary hearing" to resolve the competing claims. ORS 18.710. The parties' rights will be observed but, because it is a "summary" proceeding, the proceeding may occur expeditiously and with greater concern for substance than formalities. After the hearing, successful claimants—including third parties—are entitled to a ruling disbursing the funds from the garnished property in accordance with the court's determinations of their competing claims and objections. ORS 18.712 (directing payments by court administrator according to court's allowance of garnishment challenge); ORS 18.725 (ORS 18.712 applies to third-party challenges to garnishment).

In this case, Morris and Smith asserted their interests in the money award by filing third-party challenges to the writ of garnishment, describing their attorney liens. If successful, they would become entitled to a ruling disbursing

to them the appropriate sums of the proceeds. In effect, such a ruling forecloses their attorney liens.[6] Woods, as the debtor, could file objections to those third-party challenges to serve as responses that would assert his defenses. Woods's objections would frame the dispute for the trial court, like an answer to a complaint, circumscribing the scope of issues in the garnishment process.

Equitable recoupment was not within the scope of issues that Woods had presented to the trial court in the garnishment proceeding. Woods had filed an objection to Morris's attorney lien, but the objection focused entirely on the validity and terms of the fee agreement and the reasonableness of the fees. Woods filed no response with respect to Smith. Those concerns regarding Morris's fee agreement were the only issues presented before the ordinary 30-day deadline for a debtor to respond to a garnishment or, presumably, a third party's claim. In any event, recoupment was not included in the objection when filed.[7]

Woods's belated argument about recoupment could only be considered if he requested, and the court granted, leave to amend his objection to the third party's challenge.[8] Woods made no formal motion of that nature. However, we recognize the summary nature of the garnishment proceedings, which are expedited and somewhat less formal. Given that procedural context, and for the sake of argument, we will treat Woods's hearing memorandum—the first and only filing to mention recoupment—as a request to introduce recoupment claims as additional defenses. Accordingly, we

---

[6] In other circumstances, those attorneys might have filed an action to foreclose their attorney liens. ORS 87.445 (attorney liens upon actions and judgments); ORS chapter 88 (foreclosure of liens, generally).

[7] For this reason, Woods's ORCP 21 analogy is not well-taken. The recoupment claim was never properly presented such that the trial court could have wrongly dismissed it.

[8] *See* ORCP 21 (a defense must generally be asserted through a responsive pleading); ORCP 23 A (providing the procedure whereby a party can move to amend the pleadings); *Navas v. City of Springfield*, 122 Or App 196, 201, 857 P2d 867 (1993) ("Generally, a trial court has no authority to render a decision on an issue not framed by the pleadings."); *Crowhurt v. Button*, 54 Or App 989, 994-95, 636 P2d 1023 (1981) (action for a declaration of the relative rights and interests in real property "was not the forum in which to decide 'credits or offsets'" where "[r]ecoupment, setoff and a counterclaim were not pled," and, therefore, the trial court did not err in refusing to consider them).

review the trial court's refusal to hear arguments and evidence on that theory as a denial of a motion for leave to amend. ORCP 23.

We now proceed to the merits of Woods's request to expand the scope of the issues. We review a court's denial of leave to amend for abuse of discretion. *Ramsey v. Thompson*, 162 Or App 139, 144, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000). ORCP 23 A mandates that "leave shall be freely given when justice so requires." We balance four factors in determining whether a court permissibly exercised its discretion in this context: "(1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendment." *Ramsey*, 162 Or App at 145.

Assuming that Woods's "Amended Hearing Memorandum" could constitute such a motion, we conclude that the trial court did not abuse its discretion in denying it. First, with regard to the nature of the proposed amendments and their relationship to the existing pleadings, they were a "unilateral effort by petitioner to interject entirely new claims into the litigation." *Id.* at 147. As mentioned, Woods filed one objection and declaration with respect to the attorney liens. However, in those documents, Woods never argued for recoupment. Rather, he made factual assertions regarding the validity and terms of Morris's contingent fee agreement and the reasonableness of the fees. Those arguments, although predicated on some shared facts, were fundamentally different from the ones posed at the December hearing—that Woods was entitled to recoupment because the quality of Morris's representation amounted to malpractice not worthy of payment.[9] Woods failed to challenge Smith's lien altogether; to the contrary, he averred to its validity and amount. Together, Woods's recoupment claims, based on legal malpractice, represented a significant shift in the litigation.

---

[9] Woods said his "argument, in substance, is that *** Morris did not provide a service for which he should be paid," and, because the fees arose from Morris's mistakes, Woods did not "believe it's equitable for [him] to have to pay" them.

Second, allowing Woods to introduce recoupment claims would have prejudiced Morris and Smith. Notably, the request would have involved introducing those new and distinct claims at the very last hour. The attorneys had asserted their liens in May, Woods had filed his objection in June, and the trial court had issued its letter and its initial order announcing rulings and the evidentiary hearing in October. The attorneys had been operating for months under a particular understanding of what issues the hearing would consider. Those issues did not include the questions of recoupment. Woods was asking to enlarge the issues to include a new theory the day before the hearing, giving the attorneys practically no notice that they would need to defend against what were, in essence, malpractice claims. Even if the memorandum had been filed earlier, its discussion of the alleged malpractice was vague and conclusory. Thus, when the trial court observed that Woods was ill-equipped to argue that issue, it was equally apparent that Morris and Smith had insufficient time or evidence to prepare or present a defense. The attorneys would have been unfairly disadvantaged. Allowing Woods to assert a recoupment claim would have been prejudicial at that point in the proceedings.

Third, the effect of Woods's request on the trial court also weighs in favor of denial. Because Woods gave so little notification and the request presented new and distinct claims, the trial court would likely have needed to reschedule the hearing in order to provide the opposing parties a meaningful opportunity to prepare and defend. It is probable that accommodating Woods's request would have implicated the court's docket management. *See Downs v. Waremart, Inc.*, 137 Or App 119, 140, 903 P2d 888 (1995), *rev'd in part on other grounds*, 324 Or 307, 926 P2d 314 (1996) (affirming the trial court's denial of a motion to amend the complaint based on the age of the case and the fact that motion sought to introduce an entirely new theory into the case less than 30 days before trial).

The fourth consideration is the question about the colorable merit of Woods's recoupment claims. Those claims were predicated on multiple allegations of legal malpractice. After hearing Woods's proposed evidence, the trial court

determined that those claims would have been futile, largely due to the lack of expert testimony. There is, at the very least, some doubt as to the claim's likelihood of success. *See Pereira v. Thompson*, 230 Or App 640, 654, 217 P3d 236 (2009) (to prove a breach of an attorney's duty to its client, "a jury often requires expert evidence setting forth the appropriate standard of care owed by a reasonable attorney and how the defendant failed to uphold that standard"); *Vandermay v. Clayton*, 328 Or 646, 655, 984 P2d 272 (1999) (citing *Getchell v. Mansfield*, 260 Or 174, 179, 489 P2d 953 (1971)) (in most cases, expert testimony is necessary to establish the reasonable practice within the legal community; expert testimony "is required if the issues are not within the knowledge of the ordinary lay juror"). However, we need not reach the merits of Wood's proposed theory because the first three *Ramsey* factors weigh so heavily against granting Woods's motion to amend that, on balance, they are dispositive.

When understood in context, we conclude that the trial court acted permissibly within the range of its discretion when refusing to hear evidence on Woods's recoupment claim. Woods failed to present that theory in his prior objections that had framed the scope of the garnishment proceedings. Even if Woods's last-minute memorandum could constitute a motion for leave to amend his response to the lien claims, the court did not abuse its discretion in denying the amendment. Under the circumstances, the court did not err in declining to enlarge the scope of the proceedings. We affirm.

Affirmed.