Filed 8/27/24  Occhipinti v. Allen CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUSTINE THEDE OCCHIPINTI, | |
| Plaintiff and Respondent, | G063479 |
| v. | (Super. Ct. No. CVSW2104845) |
| CYNTHIA JUNE ALLEN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Riverside County, Raquel A. Marquez, Judge. Affirmed.

Law Office of David Akintimoye and David A. Akintimoye for Defendant and Appellant.

Price, Postel & Parma, Timothy E. Metzinger and Jeremy D. Stone for Plaintiff and Respondent.

In 2019, respondent Justine Thede Occhipinti brought an action against Johnny Allen (Johnny) in Oregon state court. In August 2020, the parties participated in a private mediation, which resulted in a binding agreement that resolved the action (Agreement). Johnny's wife, appellant Cynthia June Allen (Cynthia), was not a party to the Oregon action.[1] Nevertheless, she agreed to be bound by the Agreement and signed it as "A Necessary Party." The Agreement specified that a stipulated judgment would be entered against both Johnny and Cynthia, requiring payment of the agreed upon amounts set forth in the Agreement. Cynthia later refused to sign the stipulated judgment. In December 2020, the Oregon court nevertheless entered the stipulated judgment and signed an order making Cynthia a party to the action.

In June 2021, Occhipinti obtained a sister state judgment in California based on the Oregon judgment. Cynthia was given notice of the entry of the California judgment in August 2021. The notice informed her she had 30 days to bring a motion to vacate the California judgment. Cynthia did not bring a motion to vacate in the required 30-day period. Instead, she waited until February 6, 2023—almost two and one-half years later—to file her motion to vacate the California sister state judgment. The trial court denied the motion, finding (among other things) it was untimely. We find no error and affirm.

STATEMENT OF FACTS

In 2019, Occhipinti, successor trustee of the Lela Fay Bishop Revocable Living Trust and the Lela Fay Bishop Charitable Remainder

---

[1] Because Johnny and Cynthia share the same surname, we refer to them by their first names for clarity and ease of reference; we intend no disrespect.

Unitrust (collectively, the Trusts), initiated an action for surcharge against Johnny, former trustee of the Trusts, in the Circuit Court of the State of Oregon for Clackamas County, Case No. 19PB01698 (the Oregon Action). Occhipinti alleged Johnny embezzled more than $600,000 from the Trusts during his tenure as trustee. In August 2020, the action was privately mediated before a retired judge. Occhipinti, Johnny, the Oregon Department of Justice, the Bonnie L. Hayes Small Animal Shelter, and the Multnomah County Animal Services participated in the mediation.

The mediation resulted in the written Agreement, in which Johnny and Cynthia agreed to repay $500,000 to the Trusts. Under the terms of the Agreement, the $500,000 was to be paid in two parts: (1) a cash payment of $175,000 and (2) a "Stipulated Judgment from Respondent [Johnny] and Cynthia Allen for $325,000, together with simple interest at a rate of 2 percent per annum. Commencing September 1, 2020 continuing for ten years thereafter, interest is payable in quarterly installments on each March 31, June 30, September 30, December 31. A final payment equal to all unpaid principal and accrued interest is due on September 1, 2030." The Agreement provided the stipulated judgment would be secured by a trust deed signed by Johnny and Cynthia on certain real property located in Temecula, California. Although Cynthia had not been named in or served with the Oregon Action, she signed the Agreement, dated August 28, 2020, as "A Necessary Party." She now contends she did so because Johnny's attorney, who she says was also representing her, told her she needed to enter into the Agreement or Johnny would go to jail. In September 2020, Johnny made the initial $175,000 payment to the Trusts, as required by the Agreement.[2]

_____

[2] On or around November 2, 2021, Johnny made another payment to the Trusts, this time for $2,438.60. According to the record on appeal, that

3

Following the mediation, Cynthia received a draft of the proposed stipulated judgment referenced in the Agreement. She refused to sign it and asked Johnny's attorney to "undo" the Agreement. But she took no further action.

A hearing to read the settlement into the record was set for December 4, 2020. Just before the hearing, Johnny's counsel informed Occhipinti's counsel he did not represent Cynthia and that she might have objections to the stipulated judgment.

Occhipinti's counsel was the only person to attend the December 4, 2020, hearing; Johnny, Cynthia, and Johnny's counsel were all aware of the hearing but did not attend. At the hearing, the Oregon court directed Occhipinti to file the settlement documents with the court, including the Agreement, the previously-circulated stipulated judgment (Stipulated Judgment), and a stipulated order joining Cynthia as a necessary party (Stipulated Order). Occhipinti did so shortly after the hearing.

The Stipulated Order submitted to the Oregon court joined Cynthia as a necessary party to the Oregon Action. By its terms, the Stipulated Order was based on "the stipulat[ion] of John David Allen, Cynthia Allen, and the appearing interested parties." The interested parties are identified as the original participants in the mediation, plus Cynthia.

The Stipulated Judgment included more than six pages of factual findings or recitations not included in the Agreement. The obligations of the parties under the Stipulated Judgment, however, were nearly identical to those set forth in the Agreement. The only difference related to the trust deed on the Temecula property. Although the Agreement simply stated "[t]he

is the only additional payment made by either Johnny or Cynthia to the Trusts.

4

judgment will be secured by a trust deed" on the property, the Stipulated Judgment specified the Allens would execute and deliver an acceptable trust deed on the property to Occhipinti.[3]

The Stipulated Judgment and Stipulated Order each included signature lines for seven parties. As to each document, only three of the seven identified parties—Occhipinti, the Oregon Humane Society, and the Oregon Department of Justice—signed. The signature lines for the remaining four—Johnny, Cynthia, the Bonnie L. Hays Small Animal Shelter, and the Multnomah County Animal Shelter—are unsigned on both.

The Oregon court entered both the Stipulated Order and Stipulated Judgment on December 16, 2020.

Approximately six months later, on June 4, 2021, Occhipinti filed an application for entry of judgment on sister state judgment (Application) in the Superior Court of California, County of Riverside. The Application stated $325,000 was the "amount remaining unpaid" on the Stipulated Judgment and claimed accrued interest of $5,429.24. A certified copy of the Oregon court's Stipulated Judgment was attached to the Application.

Cynthia was served with a notice of entry of judgment on sister state judgment (Notice) and related documents by substituted service on August 20, 2021, at her home address. In January 2022, Occhipinti obtained a writ of execution, showing $333,397.84 as the total amount due.[4] In March

---

[3] The parties do not provide any information regarding whether a trust deed was ever requested or delivered, and the issue is not raised on appeal.

[4] Under the terms of the Stipulated Judgment, payment of the $325,000 is not due until September 1, *2030*. Because the judgment entered in California cannot be anything more—or less—than the Stipulated Judgment entered by the Oregon court (*Baker v. General Motors Corp.* (1998)

5

2022, Cynthia sought an exemption to the writ of execution but did not raise any issue regarding service of the Notice.

In February 2023, approximately 18 months after she was served with the Notice and almost a year after she unsuccessfully sought an exemption to the writ of execution issued on the sister state judgment, Cynthia moved to vacate the sister state judgment.[5] The California superior court denied her motion on April 11, 2023. Cynthia timely appealed.

DISCUSSION

I.

SISTER STATE JUDGMENTS

"Article IV, section 1 of the United States Constitution provides that '[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.' In accordance with this section, '[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.'" (*WV 23 Jumpstart, LLC v. Mynarcik* (2022) 85 Cal.App.5th 596, 604–605 (*Jumpstart*).) In 1974, California enacted the Sister State Money Judgments Act (Code Civ. Proc.,

---

522 U.S. 222, 223), it does not appear Occhipinti could properly execute on any amount not yet owed under the terms of the Stipulated Judgment.

[5] As of the date of Occhipinti's opposition to the motion to vacate (March 21, 2023), Cynthia had made no attempt either to seek reconsideration of, or to appeal, the Oregon court's Stipulated Judgment.

§ 1710.10 et seq.)[6] to provide a mechanism for enforcing sister state money judgments in California.

Pursuant to section 1710.15, a judgment creditor can obtain entry of a California judgment based on a sister state judgment by filing an application setting forth certain specified information and attaching an authenticated copy of the sister state judgment. "Upon the filing of the application, the clerk shall enter a judgment . . . ." (§ 1710.25, subd. (a).) "'[E]ntry by the clerk of a judgment based upon the application is mandatory [citation], constituting a ministerial act of the clerk and not a judicial act of the court.' [Citation.]. . . The newly entered judgment has the same force and effect as a judgment originally issued by a California court 'and may be enforced or satisfied in like manner.'" (*Casey v. Hill* (2022) 79 Cal.App.5th 937, 960.)

## II.

### THE MOTION TO VACATE WAS UNTIMELY

A motion to vacate a sister state judgment must be brought within 30 days of service of the notice of entry of judgment. (§ 1710.40, subd. (b).) The trial court found Cynthia's motion was untimely because she was served with the Notice on August 20, 2021, but did not bring her motion to vacate until February 6, 2023—almost two and one-half years later. On appeal, Cynthia argues her motion was not untimely for two reasons: (1) she was not properly served with the Notice, so the 30-day period never began to run; and (2) the 30-day deadline does not apply because the Oregon court did

---

[6] All further statutory references are to the Code of Civil Procedure, unless otherwise noted.

not have personal jurisdiction over her, and lack of personal jurisdiction can be raised at any time.

"The ruling on a motion to set aside a [sister state] judgment rests in the sound discretion of the trial court and will not be set aside on appeal unless a clear abuse of discretion appears." (*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 88–89.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.) The court made a factual determination that Cynthia's motion to vacate was untimely and we review that decision for substantial evidence.

Notice of entry of a sister state judgment must be served by the methods authorized for service of a summons. (§§ 415.10 & 1710.30.) Service may be effected either by personal delivery to the person to be served (§ 415.10) or, when the notice "cannot with reasonable diligence be personally delivered," by leaving the document at the person's home "in the presence of a competent member of the household," followed by mailing a copy of the document by first-class mail to the place where the document was left (§ 415.20, subd. (b)). The second method is commonly called substituted service. "Ordinarily, two or three attempts at personal service at a proper place and with correct pleadings should fully satisfy the requirement of reasonable diligence and allow substituted service to be made." (*Kremerman v. White* (2021) 71 Cal.App.5th 358, 373.)

8

Affidavits provided by three separate registered process servers detail the attempts to personally serve Cynthia.[7] The first process server made seven attempts to serve Cynthia at her home over a five-week period in June and July 2021. Those attempts covered morning and evening hours, as well as weekdays and weekends. The second process server attempted to serve Cynthia at her workplace on August 17, 2021, but was told Cynthia had been on leave since July 2021. The third process server went to Cynthia's home on August 19, 2021, but was not able to serve anyone at the home despite a two hour wait. The following day, August 20, 2021, the third process server effected substituted service, after a 45-minute wait, by leaving the Notice with Johnny. The Notice was then mailed to Cynthia at her home address by first class mail.

The Notice was on the approved judicial form and included the following statement in bold lettering: "A sister-state judgment has been

---

[7] The affidavits were authenticated by and attached as exhibits to the declaration of Jeremy D. Stone. Before the trial court and on appeal, Cynthia objects to the trial court's consideration of Stone's declaration and the declaration of Occhipinti's counsel, Mercedes W. Rhoden-Feely, because the declarations were signed under penalty of perjury "under the laws of the United States" in violation of section 2015.5's requirement that declarations be signed under penalty of perjury under the laws of the State of California. Although the declarations originally were improperly signed, eight days before the hearing, Stone and Rhoden-Feely submitted declarations identical to their original declarations except they were signed under penalty of perjury under the laws of the State of California. Because Cynthia's reply addressed the substance of the declarations, which was not altered, the corrections to the attestations caused no prejudice to her. Accordingly, the court did not err in considering Stone's and Rhoden-Feely's declarations. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1183 [a party may cure defects in a supporting declaration where there is no prejudice to the other side]; see *Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163 ["a pleading may be amended for the purpose of curing a signature defect"].)

entered against you in a California court. Unless you file a motion to vacate the judgment in this court within 30 DAYS after service of this notice, this judgment will be final. [¶] This court may order that a writ of execution or other enforcement may issue. Your wages, money, and property could be taken without further warning from the court." (Boldface omitted.)

In support of her motion to vacate, Cynthia submitted a declaration stating she had "never been personally served" with the Notice and did not receive it by mail. She further declared that she rarely spoke to Johnny at the time of service because they were estranged, even though they were living in the same house. Johnny also submitted a declaration in support of Cynthia's motion to vacate. He disputed the process servers' version of events, declaring he "ha[d] no recollection of seeing, meeting, or speaking" with any process server. He further declared the documents were not given to him or left in his presence and he was never told to give any documents to Cynthia. He declared he could not possibly have been served with the documents as the process server's declaration stated because he was never home at the time the process server claimed to have effected service, as it was his habit to "run errands and walk around between 2:00 pm and 5:00 pm every weekday" during the month of August 2021. (The proof of service shows substituted service was effected at 3:45 p.m. on August 20, 2021, a Friday.)

A registered process server's declaration of service establishes a rebuttable presumption that the facts stated in the declaration are true. (Evid. Code, § 647.) A party's declaration of nonservice, *if credited by the court*, can rebut that presumption. (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 941, fn. 6.)

10

Cynthia's motion to vacate sought to overcome the presumption created by the process servers' declaration by presenting her own declaration and one from Johnny. But the trial court was not obliged to accept the veracity of those declarations, including both Johnny's assertion that he was never actually served on behalf of Cynthia and could not have been because he was never home at the time the process server declared he was served, and Cynthia's assertion that she never received a copy of the Notice by any means. Credibility determinations—including credibility of declaration testimony presented in connection with motions—are for the trial court, and we are not at liberty to second-guess them. (*Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 492.) By finding Cynthia had failed to overcome the presumption of validity that attaches to the process servers' declarations, the trial court implicitly found Cynthia's and Johnny's declaration testimony not credible. (*United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 74 [when the facts are disputed, the appellate court """must presume the court found every fact and drew every permissible inference necessary to support its [finding], and defer to its determination of credibility of the witnesses and the weight of the evidence""""].) We will not disturb the court's credibility determinations.

Cynthia also argues the substitute service was ineffective because the process servers made no attempt to serve her at work, at home after office hours, or at home on the weekend. This argument fails for two reasons. First, she does not offer any authority for the proposition that such efforts were required before substituted service could be effected. Second, even if she had cited such authority, the affidavits from the process servers— which the court implicitly credited—show efforts were, in fact, made to serve her at work, at home after office hours, and at home on weekends.

11

In sum, we conclude substantial evidence supports the trial court's finding that Cynthia was served with the Notice on August 20, 2021. The court did not err in finding Cynthia's February 6, 2023 motion to vacate was untimely.

III.

THE OREGON COURT HAD PERSONAL JURISDICTION OVER CYNTHIA

Notwithstanding the timeliness issue, Cynthia argues the trial court erred in denying her motion to vacate because the Oregon court lacked personal jurisdiction over her. An objection based on lack of personal jurisdiction may be raised at any time. "Courts refer to jurisdiction over the parties and subject matter as 'fundamental jurisdiction,' and where this is lacking there is an entire absence of power to hear or determine the case. [Citation.] 'Judgments or orders by a court that lacks jurisdiction in this fundamental sense are void. [Citation.] Objection may be raised at any time . . . .'" (*Airlines Reporting Corp. v. Renda* (2009) 177 Cal.App.4th 14, 19–20.)

Although "'''it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of [the United States Supreme] Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.'''" (*Jumpstart, supra,* 85 Cal.App.5th at p. 605.) In other words, if "the court of the first state has expressly litigated the question of jurisdiction,

its determination is res judicata and is itself protected by the full faith and credit clause." (*Craig v. Superior Court* (1975) 45 Cal.App.3d 675, 680.) If the Oregon court decided it had jurisdiction over Cynthia, we must honor that decision, and the 30-day limit imposed by section 1710.40, subdivision (a) applies. (*Jumpstart, supra,* 85 Cal.App.5th at p. 606, fn. 3.)

The Oregon court determined it had personal jurisdiction over Cynthia when it entered an order joining her as a necessary party to the Oregon Action based on her execution of the Agreement. The order reads, in pertinent part: "A binding Settlement Agreement requires that Cynthia Allen be joined as a necessary party. Although the court is informed that she may regret entering into the binding Settlement Agreement, the court is enforcing it." We are required to give full faith and credit to the Oregon court's finding of personal jurisdiction.

Even if the Oregon court had not decided the question of jurisdiction, our conclusion would not change because we find the Oregon court had personal jurisdiction over Cynthia. Cynthia argues the Oregon court did not have jurisdiction over her because she was not named in the Oregon Action, was not served with any summons, did not appear before the Oregon court, and did not sign the Stipulated Order making her a party to the Oregon Action. She asserts she only signed the Agreement because Johnny's attorney—who she claims also represented her—told her Johnny "would be charged with crimes and jailed" unless she signed. She argues the attorney engaged in an undisclosed conflict of interest in representing her and asking her to sign the Agreement.[8] Despite her arguments, Cynthia

---

[8] On unidentified dates, Cynthia filed complaints with the Oregon State Bar against Johnny's counsel and Occhipinti's counsel.

admits she signed the Agreement, that she did so "as [a] necessary party," and in it she agreed to have a stipulated judgment entered against her.

Under Oregon law, a court may exercise personal jurisdiction over a party who "appears in the action and waives the defense of lack of jurisdiction over the person . . . ." (Or. Rules Civ. Proc., rule 6.)[9] Cynthia signed the Agreement, which bore an Oregon state court caption and expressly stated, (1) it was settling the Oregon Action; and (2) a stipulated judgment would be entered in the action against Cynthia and Johnny. By signing the Agreement as a "Necessary Party" and agreeing that a stipulated judgment would be entered against her, Cynthia appeared in the action, voluntarily consented to the jurisdiction of the Oregon court, and waived any defense of lack of jurisdiction. (See *Shriners Hospitals for Children v. Cox, supra,* 434 P.3d at pp. 426–427] [defense of lack of personal jurisdiction can be waived by voluntary appearance or consent]; *Garner v. Alexander* (1941) 120 P.2d 238, 241 [personal jurisdiction is acquired by "'voluntary appearance either in person or by attorney'"]; *Anderson v. Guenther* (1933) 22 P.2d 339, 341 [general appearance confers jurisdiction, and any action "which recognizes the cause as before the court, constitutes a general appearance"]; *Jacobson v. Mt. Park Home Owners Ass'n.* (1983) 670 P.2d 633, 634 ["An appearance is an act by which a party comes into court and submits itself to the court's jurisdiction. [The defendant] submitted itself to the circuit court's jurisdiction when its attorney signed the stipulation"].)

---

[9] As used in Oregon Rules of Civil Procedure, rule 6, the term waive "does not refer to the intentional relinquishment of a known right. Rather, it describes the effect of failing to assert the defense (whether known or unknown) of lack of personal jurisdiction or insufficient or improper service in a timely fashion." (*Shriners Hospitals for Children v. Cox* (2019) 434 P.3d 422, 426, fn. 8].)

We conclude there is no merit to Cynthia's argument that the Oregon court lacked personal jurisdiction over her.

## IV.

### CYNTHIA'S OTHER ARGUMENTS ARE MOOT

Finally, Cynthia raises a number of other arguments in support of her contention that the trial court erred in denying her motion to vacate the sister state judgment. They include (1) the court improperly denied the motion on the additional ground that Johnny did not join in it; (2) the Oregon court acted in excess of its jurisdiction because it entered the Stipulated Judgment despite Cynthia's refusal to sign it; (3) Johnny's counsel in the Oregon action was also representing Cynthia when he told her that Johnny would be criminally prosecuted if she did not sign the Agreement, and the purported dual representation created an undisclosed conflict of interest that invalidated her execution of the Agreement; and (4) Occhipinti's counsel engaged in misconduct by submitting the Stipulated Judgment to the Oregon court even though she knew Cynthia opposed the judgment and had refused to sign it.

In light of our conclusion that the trial court properly denied Cynthia's motion to vacate the California sister state judgment on the ground it was untimely, we need not address the court's determination that Johnny should have joined in the motion. Because we conclude the Oregon court had personal jurisdiction over Cynthia, we need not address her remaining attacks on the Stipulated Judgment. (See *Jumpstart, supra,* 85 Cal.App.5th at p. 607 [""upon a claim that a foreign judgment is not entitled to full faith and credit, the permissible scope of inquiry is limited to a determination of whether the court of forum had fundamental jurisdiction in the case.'"

15

[Citation.] . . . 'A California court, in ruling on a motion to vacate entry of a sister state judgment, may not retry the case].'")

## DISPOSITION

The postjudgment order is affirmed. Respondent shall recover costs on appeal.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.